[No. 42378. En Banc. July 5, 1973.]

OLYMPIC FOREST PRODUCTS, INC., *Appellant,* v. CHAUSSEE CORPORATION *et al., Respondents.*

*Phillip Offenbacker* (of *Short, Cressman & Cable*), for appellant.

*Robert P. Tjossem* (of *Powell, Livengood, Dunlap & Silvernale*), for respondents.

BRACHTENBACH, J.—It is common legal knowledge that the filing of an affidavit and bond results in the perfunctory issuance of a writ of garnishment, before judgment, in a suit for a debt. Since 1893, the affidavit only need be couched in the statutory language that ".   .   .   such debt is just, due and unpaid, and that the garnishment applied for is not sued out to injure either the defendant or the garnishee." Laws of 1893, ch. 56, § 1; RCW 7.33.010 (1) (b).

This case challenges that procedure. The major question is whether the prejudgment garnishment of a corporation's bank account without prior notice and opportunity for hearing constitutes a deprivation of property without that procedural due process required by the fourteenth amendment to the United States Constitution and article 1, section 3 of the Washington State Constitution.

Plaintiff, Olympic Forest Products, Inc., sued defendant, Chaussee Corporation, to recover $30,603.63 allegedly due for building materials sold to defendant. At the same time that the lawsuit was started, the plaintiff obtained a writ of garnishment and garnished the defendant's bank account. Plaintiff had filed a form affidavit in compliance with RCW 7.33.010 (1) (b) and filed a bond as required by RCW 7.33.030.

The next day, the defendant was served with the summons and complaint and a copy of the writ. The garnished bank answered, revealing that defendant's bank account at the time of service of the writ contained $30,621.63.

Defendant made an ex parte application for an order discharging the writ of garnishment upon the filing of a discharge bond. By uncontroverted affidavit, the defendant alleges that the garnished bank account represented 30 percent of the defendant's working capital and that this deprivation of the use of that working capital made it extremely difficult, if not impossible, for the defendant to continue its operations. On November 8, 1971, the court commissioner entered a conditional order, discharging the writ of garnishment and vacating all proceedings thereunder. This order was conditioned upon the filing of a bond in the sum of $30,603.63 undertaking that defendant would "perform the judgment of the court" in said action as provided in RCW 7.33.170. The defendant then filed such a discharge bond issued by the Travelers Indemnity Company.

To obtain this discharge bond it was necessary for the defendant to pledge $30,000 in time certificates to its bank which in turn had to issue an irrevocable letter of credit indemnifying Travelers Indemnity Company with respect to any loss it might incur under the bond. The bank refused to issue the letter of credit until defendant pledged the time certificates to the bank as security for the letter. Defendant did pledge the required amount in time certificates; the bank then issued its irrevocable letter of credit and Travelers issued the discharge bond to satisfy the court commissioner's order.

On November 19, 1971, defendant answered plaintiff's complaint by denying the indebtedness and claiming damages. Defendant alleged that plaintiff breached their agreement concerning the materials being purchased. In addition, defendant alleged that Olympic Forest Products, Inc., wrongfully sued out the writ of garnishment. In short, plaintiff's claim was disputed.

Chaussee Corporation then filed a motion to quash and dissolve the writ of garnishment, contending that the statutes authorizing this garnishment violate the due process requirements of the fourteenth amendment to the United States Constitution and article 1, section 3 of the Washington State Constitution. The superior court granted defendant's motion on March 17, 1972. This order (1) unconditionally discharged the writ of garnishment herein and vacated all proceedings thereunder; (2) unconditionally released the garnishee bank from the writ; and (3) terminated all obligations of the Travelers Indemnity Company pursuant to their bond on file, thereby completely exonerating Travelers. Plaintiff appeals from this order.

The writ in question was issued pursuant to RCW 7.33.010(1)(b), which provides that

(1) . . . the clerks of the superior courts in the various counties in the state may issue writs of garnishment returnable to their respective courts in the following cases:

. . .

(b) Where the plaintiff sues for a debt and the plaintiff or someone in his behalf makes affidavit that such debt is just, due and unpaid, and that the garnishment applied for is not sued out to injure either the defendant or the garnishee.

The fourteenth amendment to the United States Constitution provides in part that no "state [shall] deprive any person of life, liberty, or property, without due process of law . . ." Article 1, section 3 of the Washington State Constitution likewise states that, "No person shall be deprived of life, liberty, or property, without due process of law." Noting the near identity in the language of these

clauses, we stated in *Petstel, Inc. v. County of King,* 77 Wn.2d 144, 153, 459 P.2d 937 (1969), that "the federal cases while not necessarily controlling should be given 'great weight' in construing our own due process provision." We are further cognizant, of course, that insofar as the due process clause of the Fourteenth Amendment provides greater protection than does article 1, section 3, the federal constitution must prevail. U.S. Const. art. 6.

While the boundaries of the concept of due process are not capable of precise formulation, there are certain fundamental considerations involved.

■ For over a century it has been recognized that "Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified." *Baldwin v. Hale,* 68 U.S. (1 Wall.) 223, 233 (1864). The fundamental requisites of due process are "the opportunity to be heard," *Grannis v. Ordean,* 234 U.S. 385, 394, 58 L. Ed. 1363, 34 S. Ct. 779 (1914), and "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections," *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 94 L. Ed. 865, 70 S. Ct. 652 (1950). Thus, "at a minimum" the due process clause of the Fourteenth Amendment demands that a deprivation of life, liberty or property be preceded by "notice and opportunity for hearing appropriate to the nature of the case." *Mullane* at 313. Moreover, this opportunity "must be granted at a meaningful time and in a meaningful manner." *Armstrong v. Manzo,* 380 U.S. 545, 552, 14 L. Ed. 2d 62, 85 S. Ct. 1187 (1965).

Synthesizing decisions "representing over a hundred years of effort," the United States Supreme Court recently refined these fundamental requirements of procedural due process into the following standard:

> [D]ue process requires, at a minimum, that absent a countervailing state interest of overriding significance, persons forced to settle their claims of right and duty

through the judicial process must be given a meaningful opportunity to be heard.

*Boddie v. Connecticut,* 401 U.S. 371, 377, 28 L. Ed. 2d 113, 91 S. Ct. 780 (1971).

However, while the minimal requisites of due process are definite, their form may vary according to the exigencies of the particular situation.

"[D]ue process," unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances. Expressing as it does in its ultimate analysis respect enforced by law for that feeling of just treatment which has been evolved through centuries of Anglo-American constitutional history and civilization, "due process" cannot be imprisoned within the treacherous limits of any formula. Representing a profound attitude of fairness between man and man, and more particularly between the individual and government, "due process" is compounded of history, reason, the past course of decisions, and stout confidence in the strength of the democratic faith which we profess. Due process is not a mechanical instrument. It is not a yardstick. It is a process. It is a delicate process of adjustment inescapably involving the exercise of judgment by those whom the Constitution entrusted with the unfolding of the process.

*Joint Anti-Fascist Refugee Comm. v. McGrath,* 341 U.S. 123, 162, 95 L. Ed. 817, 71 S. Ct. 624 (1951). (Frankfurter, J., concurring.)

This flexibility means that "A procedural rule that may satisfy due process in one context may not necessarily satisfy procedural due process in every case." *Bell v. Burson,* 402 U.S. 535, 540, 29 L. Ed. 2d 90, 91 S. Ct. 1586 (1971). The procedural safeguards afforded in each situation should be tailored to the specific function to be served by them. *See Goldberg v. Kelly,* 397 U.S. 254, 267, 25 L. Ed. 2d 287, 90 S. Ct. 1011 (1970). Also, in determining the specific procedures required by due process under any given set of circumstances we must consider:

The precise nature of the interest that has been adversely affected, the manner in which this was done, the reasons for doing it, the available alternatives to the

procedure that was followed, the protection implicit in the office of the functionary whose conduct is challenged, [and] the balance of hurt complained of and good accomplished . . .

*Joint Anti-Fascist Refugee Comm. v. McGrath, supra* at 163. (Frankfurter, J., concurring.)

This elasticity in the *form* of the hearing demanded by due process in different contexts should not, however, be confused with the basic *right* to a prior hearing of some sort.

> The formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings. That the hearing required by due process is subject to waiver, and is not fixed in form does not affect its root requirement that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest, except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event.

(Footnotes omitted.) *Boddie v. Connecticut, supra* at 378.

■ With these fundamental principles in mind, our initial inquiry is whether a "person" has been deprived of "property" by the prejudgment garnishment of defendant's bank account, thus triggering the requirements of procedural due process. It is well settled that a corporation is a "person" within the meaning of the due process clause of the Fourteenth Amendment. *Grosjean v. American Press Co.,* 297 U.S. 233, 244, 80 L. Ed. 660, 56 S. Ct. 444 (1936).

We move then to the question of whether the garnishment of defendant's corporate bank account is a deprivation of property within the meaning of the due process clauses.

In *Sniadach v. Family Fin. Corp.,* 395 U.S. 337, 23 L. Ed. 2d 349, 89 S. Ct. 1820 (1969), the Wisconsin garnishment procedure under challenge permitted a creditor to freeze a debtor's wages without prior notice and an opportunity to be heard. "[T]he sole question," stated the court at page 339, "is whether there has been a taking of property without

that procedural due process that is required by the Fourteenth Amendment." In holding the garnishment to constitute a taking of property—albeit a temporary one—the court observed at page 339:

They [wages] may, it is true, be unfrozen if the trial of the main suit is ever had and the wage earner wins on the merits. But in the interim the wage earner is deprived of his enjoyment of earned wages without any opportunity to be heard and to tender any defense he may have . . .

The United States Supreme Court concluded that such an interim taking of property must be preceded by notice and the opportunity to be heard: "Where the taking of one's property is so obvious, it needs no extended argument to conclude that absent notice and a prior hearing [citation omitted] this prejudgment garnishment procedure violates the fundamental principles of due process." *Sniadach* at 342.

In his concurring opinion, Justice Harlan explained the precise nature of the "property" interest taken in *Sniadach* at 342:

The "property" of which petitioner has been deprived is the *use* of the garnished portion of her wages during the interim period between the garnishment and the culmination of the main suit. Since this deprivation cannot be characterized as *de minimis*, she must be accorded the usual requisites of procedural due process: notice and a prior hearing.

Plaintiff contends, however, that the *Sniadach* decision is inapplicable to the instant case because there the court referred to wages as a "specialized type of property presenting distinct problems in our economic system." (395 U.S. at 340.) Thus, reasons plaintiff, the impact of a wage garnishment upon an individual debtor was the major reason for the *Sniadach* court's departure from its previously established position approving prejudgment summary seizures. It is true that some courts have narrowly confined *Sniadach* to the prejudgment garnishment of wages. *E.g.,* *American Olean Tile Co. v. Zimmerman*, 317 F. Supp. 150

(D. Hawaii 1970); *Reeves v. Motor Contract Co.*, 324 F. Supp. 1011 (N.D. Ga. 1971). But other courts have rejected the restricted reading of *Sniadach* suggested by plaintiff, and have instead construed that decision as reaffirming or establishing general principles of procedural due process. *E.g., Larson v. Fetherston*, 44 Wis. 2d 712, 172 N.W.2d 20 (1969); *Randone v. Appellate Dep't*, 5 Cal. 3d 536, 488 P.2d 13, 96 Cal. Rptr. 709 (1971); *Jones Press, Inc. v. Motor Travel Servs., Inc.*, 286 Minn. 205, 176 N.W.2d 87 (1970). These latter decisions cogently support a broad reading of *Sniadach*.

In *Larson v. Fetherston, supra* at 718, the court held that the scope of *Sniadach* cannot logically be limited to the garnishment of wages, but applies as well to the prejudgment garnishment of a corporation's bank account:

> [N]o valid distinction can be made between garnishment of wages and that of other property. Clearly, a due process violation should not depend upon the type of property being subjected to the procedure. Under the respondents' contention wages in the hands of the employer would be exempt from prejudgment garnishment, but wages deposited in a bank or other financial institution would be subject to prejudgment garnishment.

Similarly, the court in *Jones Press, Inc. v. Motor Travel Servs., Inc., supra* at 210, found it irrational to "insulate a creditor" from the requirements of due process merely because his debtor was self-employed, rather than a wage earner, and held *Sniadach* to apply to the garnishment of a corporation's accounts receivable.

The Supreme Court of California has observed that *Sniadach* does not represent an abrupt deviation from the traditional due process analysis of the United States Supreme Court:

> *Sniadach* does not mark a radical departure in constitutional adjudication. It is not a rivulet of wage garnishment but part of the mainstream of the past procedural due process decisions of the United States Supreme Court.
> . . .

To be sure, the *result* reached in *Sniadach* constituted a departure from earlier decisions which had upheld summary prejudgment attachment and garnishment; the change, however, resulted not from an alteration of principles of due process but instead from a reevaluation of the potential and actual effect of prejudgment seizure upon debtors. Prior courts had facilely reasoned that prejudgment remedies did not amount to a "taking" of property since the attachment or garnishment was only a "temporary" measure . . . and consequently had concluded that general due process standards were not applicable. The *Sniadach* court, in contrast, recognized that realistically such procedures did deprive the debtor of the use of the attached property and that such deprivation was indeed a "taking" of a significant property interest, which often resulted in serious hardship.

(Footnote omitted.) *Randone v. Appellate Dep't,* 5 Cal. 3d 536, 550-52, 488 P.2d 13, 96 Cal. Rptr. 709 (1971).

Any doubt as to whether the *Sniadach* decision is based upon a due process "right to be heard" generally applicable to summary prejudgment remedies, or is limited to the context of wage garnishment, was resolved by the United States Supreme Court in the consolidated cases of *Fuentes v. Shevin* and *Parham v. Cortese,* 407 U.S. 67, 32 L. Ed. 2d 556, 92 S. Ct. 1983 (1972). Therein the court reviewed the constitutionality of state laws permitting the summary seizure of goods or chattels under a writ of replevin.

[T]he statutes provide for the issuance of writs ordering state agents to seize a person's possessions, simply upon the *ex parte* application of any other person who claims a right to them and posts a security bond. Neither statute provides for notice to be given to the possessor of the property, and neither statute gives the possessor an opportunity to challenge the seizure at any kind of prior hearing.

*Fuentes v. Shevin, supra* at 69.

Holding that such replevin provisions work a deprivation encompassed within the protection of the due process clause and are therefore invalid for failing to provide prior notice and hearing, the court cited *Sniadach* as authority for the rule that "a temporary, nonfinal deprivation of property is

nonetheless a 'deprivation' in the terms of the Fourteenth Amendment." *Fuentes* at 85. The court squarely rejected the contention that only the "absolute necessities" of life, *e.g.*, wages, deserve due process protection:

> Both decisions [*Sniadach v. Family Fin. Corp.*, 395 U.S. 337, and *Goldberg v. Kelly*, 397 U.S. 254] were in the mainstream of past cases, having little or nothing to do with the absolute "necessities" of life but establishing that due process requires an opportunity for a hearing before a deprivation of property takes effect.

*Fuentes v. Shevin, supra* at 88.

■ Thus the basic due process requirements of notice and a prior hearing are not limited to the protection of only certain types of property, for "if the root principle of procedural due process is to be applied with objectivity, it cannot rest on such distinctions. The Fourteenth Amendment speaks of 'property' generally." *Fuentes* at 90. Where any "significant property interest" is at stake the safeguards of procedural due process are applicable.

Turning to the facts before us, it cannot be gainsaid that the garnishment of the defendant corporation's bank account deprived it of a significant property interest. This interest can be contrasted to those considered in *Fuentes* at 84 and 86 where "most, if not all, of the appellants lacked full title to the chattels; and their claim even to continued possession was a matter in dispute. Moreover, the chattels at stake were nothing more than an assortment of household goods." Yet the court held that the appellants had been deprived of a significant property interest: "the interest in continued possession and use of the goods."

Defendant herein was deprived of the use of over $30,000, representing 30 percent of its working capital; and this interest is no less significant merely because the defendant corporation utilizes it in a business setting. While the commercial nature and experience of a defendant may be relevant to the question of a voluntary, intelligent and knowing *waiver* of procedural due process safeguards in a

corporate property right case, *see D.H. Overmyer Co. v. Frick Co.*, 405 U.S. 174, 31 L. Ed. 2d 124, 92 S. Ct. 775 (1972), such factors are irrelevant to the question of whether the defendant here has been deprived of a significant property interest.

We hold that the garnishment of the defendant's bank account is a deprivation of a significant property interest within the purview of the due process clauses of the federal and state constitutions. To determine whether due process requirements have been satisfied, we turn to the nature of the statutory safeguards afforded to defendant before this deprivation took place.

The substance of RCW 7.33.010(1)(b), the subsection permitting the prejudgment garnishment herein, has remained unchanged since 1893. Laws of 1893, ch. 56, § 1. Apart from a partial exception (RCW 7.33.010(2)) and exemption (RCW 7.33.280) for earnings, RCW 7.33.010(1) (b) authorizes the prejudgment garnishment of any property of the defendant. The safeguards provided the defendant by the Washington garnishment act, RCW 7.33, Laws of 1969, 1st Ex. Sess., ch. 264, are similar to those in the replevin statutes challenged in *Fuentes*.

Pursuant to RCW 7.33.010(1)(b), a party seeking a prejudgment writ of garnishment need only make the bare assertion that a debt is "just, due and unpaid" from the defendant, "and that the garnishment applied for is not sued out to injure either the defendant or the garnishee." This self-serving, conclusory statement—unsupported by any specific grounds or special justification for the issuance of the writ—entitles plaintiff to the writ upon the filing of a security bond. Once these "requisites" have been complied with, the clerk has no discretion, but "shall immediately issue a writ of garnishment." RCW 7.33.050. As in *Fuentes* at 73, "There is no requirement that the applicant make a convincing showing . . ." that the affidavit is, in fact, correct.

As in *Fuentes* at 75, a defendant "is provided no prior notice and allowed no opportunity whatever to challenge

the issuance of the writ." In the case at bench, defendant was served with a copy of the writ together with the summons and complaint in the principal action on November 4, 1971, the day following the service of the writ upon the garnishee bank. Thus, defendant was notified of the deprivation of its bank account 1 day after the writ of garnishment became effective. *See* RCW 7.33.140; RCW 7.33.320.

■■ The primary question before us is the same question addressed by the court in *Fuentes: i.e.,* whether this statutory scheme is constitutionally defective in failing to provide for a hearing "at a meaningful time." *Fuentes* at 80. We hold that procedural due process requires notice and an opportunity for hearing *before* the state authorizes the prejudgment garnishment of property.

None of the "safeguards" available to defendant under RCW 7.33 is an acceptable substitute for a prior hearing. Although the defendant might regain the use of its working capital by prevailing at the post-garnishment hearing on the merits, and perhaps thereby even have an action for damages against plaintiff under RCW 7.33.340, such benefits cannot rectify the taking of defendant's property without due process of law.

> If the right to notice and a hearing is to serve its full purpose, then, it is clear that it must be granted at a time when the deprivation can still be prevented. . . . [N]o later hearing and no damage award can undo the fact that the arbitrary taking that was subject to the right of procedural due process has already occurred. "This Court has not . . . embraced the general proposition that a wrong may be done if it can be undone." *Stanley* v. *Illinois,* 405 U.S. 645, 647.

*Fuentes v. Shevin, supra* at 81-82. *Accord, Bell v. Burson,* 402 U.S. 535, 542, 29 L. Ed. 2d 90, 91 S. Ct. 1586 (1971).

Likewise, neither the vague, conclusory affidavit required of the plaintiff nor the garnishment security bond which must be executed by plaintiff (RCW 7.33.030) corrects the constitutional infirmity of RCW 7.33.010(1)(b).

To be sure, the requirements that a party seeking a writ must first post a bond, allege conclusorily that he is enti-

tled to specific goods, and open himself to possible liability in damages if he is wrong, serve to deter wholly unfounded applications for a writ. But those requirements are hardly a substitute for a prior hearing, for they test no more than the strength of the applicant's own belief in his rights. . . .

The minimal deterrent effect of a bond requirement is, in a practical sense, no substitute for an informed evaluation by a neutral official. More specifically, as·a matter of constitutional principle, it is no replacement for the right to a prior hearing that is the only truly effective safeguard against arbitrary deprivation of property.

*Fuentes* at 83.

Finally, RCW 7.33.170, which permits the defendant to discharge the writ by executing a bond to plaintiff "to the effect that he will perform the judgment of the court," does not compensate for the absence of a prior hearing. The statutes held invalid in *Sniadach, Fuentes* and *Bell v. Burson, supra,* all included such recovery provisions. In order to free its bank account, defendant was forced to pledge $30,000 in time certificates to obtain the discharge bond. As the court explained in *Fuentes* at page 85:

When officials . . . seize one piece of property from a person's possession and then agree to return it if he surrenders another, they deprive him of property whether or not he has the funds, the knowledge, and the time needed to take advantage of the recovery provision.

Some notice and hearing is required, then, before the state's procedures may deprive defendant of its bank account, a significant property interest. The precise scope and form of this notice and prior hearing are matters for legislative—not judicial—determination, but certain broad constitutional guidelines are manifest.

Such notice and hearing need not embody all of the formalities of a full-blown trial on the merits in the principal action. Rather, due process requires that the procedural safeguards afforded the defendant be "appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 94 L. Ed. 865, 70 S. Ct. 652 (1950). The purpose of this hearing will be a controlling

factor in determining what specific procedures are "appropriate":

> Since the essential reason for the requirement of a prior hearing is to prevent unfair and mistaken deprivations of property, however, it is axiomatic that the hearing must provide a real test. "[D]ue process is afforded only by the kinds of 'notice' and 'hearing' that are aimed at establishing the validity, or at least the probable validity, of the underlying claim against the alleged debtor *before* he can be deprived of his property . . . ." *Sniadach* v. *Family Finance Corp., supra,* at 343 (Harlan, J., concurring).

*Fuentes v. Shevin,* 407 U.S. 67, 97, 32 L. Ed. 2d 556, 92 S. Ct. 1983 (1972).

We are aware that in certain "extraordinary situations" notice and opportunity for hearing may be postponed until after a deprivation of property occurs. *Fuentes* at 90. But this summary procedure will satisfy the demands of due process only in truly exceptional circumstances. Reviewing the "few limited situations" in which prehearing seizure of property has been allowed, the court in *Fuentes* outlined three distinctive features common to such cases:

> First, in each case, the seizure has been directly necessary to secure an important governmental or general public interest. Second, there has been a special need for very prompt action. Third, the State has kept strict control over its monopoly of legitimate force: the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance.

*Fuentes* at 91.

While the garnishment procedure permitted by RCW 7.33.010(1)(b) does not involve outright seizure, it does work a deprivation of property comparable to seizure in its effect upon the defendant. The threefold criterion of an "extraordinary situation" set forth in *Fuentes* is therefore appropriate for consideration here.

We first note that the concern here is private gain, not the general public interest. No vital governmental interest,

such as gaining of jurisdiction (*see Ownbey v. Morgan*, 256
U.S. 94, 65 L. Ed. 837, 41 S. Ct. 433, 17 A.L.R. 873 (1921)),
has been advanced in behalf of the prejudgment garnish-
ment procedure authorized by RCW 7.33.010(1)(b). Nor do
the additional costs inherent in a prior hearing constitute a
countervailing state interest sufficient to override the fun-
damental procedural safeguards demanded by due process.

> Procedural due process is not intended to promote
> efficiency or accommodate all possible interests: it is in-
> tended to protect the particular interests of the person
> whose possessions are about to be taken.
>
> "The establishment of prompt efficacious procedures to
> achieve legitimate state ends is a proper state interest
> worthy of cognizance in constitutional adjudication. But
> the Constitution recognizes higher values than speed and
> efficiency. Indeed, one might fairly say of the Bill of
> Rights in general, and the Due Process Clause in particu-
> lar, that they were designed to protect the fragile values
> of a vulnerable citizenry from the overbearing concern
> for efficiency and efficacy that may characterize praise-
> worthy government officials no less, and perhaps more,
> than mediocre ones." *Stanley v. Illinois*, 405 U.S. 645, 656.

*Fuentes* at 90, n.22. *Accord, Bell v. Burson, supra* at 540.

Second, RCW 7.33.010(1)(b) does not limit prejudgment
garnishment to emergencies that demand immediate action.
"There may be cases in which a creditor could make a
showing of immediate danger that a debtor will destroy or
conceal disputed goods." *Fuentes* at 93. Or the creditor
may be able to specifically demonstrate, to the satisfaction
of an independent state official who evaluates the urgency
of the special circumstances so alleged, "an actual and sig-
nificant danger that the debtor, if notified of the suit or
potential [garnishment], will flee from the jurisdiction
with his assets or will conceal his property to prevent
future execution." *Randone v. Appellate Dep't*, 5 Cal. 3d
536, 557, 488 P.2d 13, 96 Cal. Rptr. 709 (1971).

The facts here present no situation requiring special pro-
tection; plaintiff's affidavit states no extraordinary circum-
stances justifying issuance of the writ and none has been
suggested. Even if such an allegation of extraordinary cir-

cumstances had been made, however, it would not justify, constitutionally, the issuance of a writ under RCW 7.33.010(1)(b) as now written. Because garnishment proceedings are purely and strictly statutory in nature, *McAvoy v. Weber*, 198 Wash. 370, 372, 88 P.2d 448 (1939), we must look at the statute as written, not as it might be written. The statute is not "narrowly drawn to meet any such unusual conditions." *Sniadach v. Family Fin. Corp.*, 395 U.S. 337, 23 L. Ed. 2d 349, 89 S. Ct. 1820 (1969). It is not for this court to write constitutionally required conditions into the statute.

Finally, here as in *Fuentes*, the state has abdicated control over state power.

> Private parties, serving their own private advantage, may unilaterally invoke state power to replevy goods from another. No state official participates in the decision to seek a writ; no state official reviews the basis for the claim to repossession; and no state official evaluates the need for immediate seizure. There is not even a requirement that the plaintiff provide any information to the court on these matters. The State acts largely in the dark.

*Fuentes* at 93.

We hold therefore that RCW 7.33.010(1)(b), which permits the prejudgment garnishment of property without notice and a prior hearing, violates the procedural due process guaranteed by the fourteenth amendment to the United States Constitution and article 1, section 3 of the Washington State Constitution, both on the face of the statute and as applied to defendant herein. Our holding is a narrow one. RCW 7.33.010(1)(b) is the only provision of the garnishment act authorizing the prejudgment garnishment challenged herein, and we need not invalidate any other part of RCW 7.33. *See, e.g., Tilton v. Richardson*, 403 U.S. 672, 684, 29 L. Ed. 2d 790, 91 S. Ct. 2091 (1971); *United States v. Jackson*, 390 U.S. 570, 585 n.27, 20 L. Ed. 2d 138, 88 S. Ct. 1209 (1968).

None of plaintiff's remaining contentions warrants a contrary result. Plaintiff's argument that RCW 7.33.010(1)(b)

is a valid exercise of the police power is inapposite. An otherwise legitimate exercise of the police power must fall if it violates specific constitutional requirements. *Weiss v. Bruno,* 82 Wn.2d 199, 509 P.2d 973 (1973); *Boddie v. Connecticut,* 401 U.S. 371, 379, 28 L. Ed. 2d 113, 91 S. Ct. 780 (1971).

Plaintiff also contends that the doctrines of waiver and estoppel bar the defendant from challenging the constitutionality of RCW 7.33.010(1)(b) because defendant previously filed a bond to discharge the writ of garnishment pursuant to RCW 7.33.170. The crux of plaintiff's argument is the rule that one may not retain the benefits of an act while attacking the constitutionality of one of its important conditions. *Fahey v. Mallonee,* 332 U.S. 245, 91 L. Ed. 2030, 67 S. Ct. 1552 (1947), is illustrative of the cases cited by plaintiff to support the application of this principle to the facts before us.

In *Fahey v. Mallonee, supra* at 256, the court held that "one who utilizes an Act to gain advantages of corporate existence is estopped from questioning the validity of its vital conditions." The court found provisions of an act granting the corporation its right to exist to be not severable from other provisions of the same act placing limitations on the continued existence of that corporation. Thus, under *Fahey,* one who (1) gains a special privilege under an act, (2) assents to all of the statutory conditions contained in the grant of that privilege, and (3) utilizes and seeks to retain all of the granted benefits, will be estopped from challenging the constitutionality of the conditions of the grant.

This rule is inapplicable to the present case. Plaintiff—not defendant—initially took advantage of the garnishment act by obtaining the writ of garnishment. The only "benefit" derived from RCW 7.33 by defendant is a dubious one: the opportunity to exchange one economic burden for another, by substituting a bond, secured by its time certificates, for its working capital as security for a possible judgment for plaintiff in the principal action. The order

discharging the writ of garnishment on November 8, 1971, did so only upon the condition that defendant file a bond in accordance with RCW 7.33.170. That order insured plaintiff that any judgment against defendant on the merits would be satisfied; it left defendant, in fact, ultimately responsible for such a judgment. In *Jones Press, Inc. v. Motor Travel Servs., Inc.,* 286 Minn. 205, 210, 176 N.W.2d 87 (1970), the court rejected a similar waiver argument by stating:

> The economic burden which defendant has sustained to achieve this result [discharge of the writ upon the posting of a bond] is one which stems directly from the garnishment proceedings. It inflicts a hardship which is different only in form and not in substance.

We hold that the utilization of RCW 7.33.170 does not bar defendant from challenging the constitutionality of RCW 7.33.010(1)(b).

Plaintiff further argues that a party is estopped from questioning the validity of a judgment which he has previously consented to and obtained a benefit from. *Svatonsky v. Svatonsky,* 63 Wn.2d 902, 389 P.2d 663 (1964). However, defendant has not, and does not question the validity of the November 8, 1971, order which conditionally discharged the writ of garnishment upon the filing of a discharge bond. Rather, defendant challenges the validity of RCW 7.33.010(1)(b), the statutory subsection authorizing the prejudgment garnishment of its property without prior notice and an opportunity to be heard.

Finally, we reject plaintiff's contention that defendant has maintained inconsistent positions in these judicial proceedings. Defendant's claim for damages against plaintiff under RCW 7.33.340 for wrongfully suing out this garnishment is not inconsistent with defendant's constitutional challenge of RCW 7.33.010(1)(b), the specific statutory provision authorizing the alleged wrongful garnishment.

However, our decision as to the invalidity of RCW 7.33.010(1)(b), standing alone, does not entitle defendant to an action for attorney's fees or other damages flowing from the garnishment herein. RCW 7.33.340 establishes an

action for damages by garnishment defendant only "in the event judgment is not entered for the plaintiff on the claim sued upon by plaintiff, and the claim has not voluntarily been settled or otherwise satisfied . . ." Thus the fact that plaintiff obtained a writ of garnishment under a statutory provision which we now hold to be unconstitutional does not per se give defendant an action for attorney's fees or other damages. Such action will arise only if a judgment is not entered for plaintiff in the principal action as provided in RCW 7.33.340. This would be true irrespective of any attack upon the constitutionality of RCW 7.33.010 (1) (b).

The order of the superior court granting defendant's motion to quash the garnishment is affirmed.

HALE, C.J., FINLEY, ROSELLINI, HUNTER, HAMILTON, STAFFORD, WRIGHT, and UTTER, JJ., concur.