196 P.3d 711 (2008)
Juanita ROSANDER and David Rosander, wife and husband, Respondents,
v.
NIGHTRUNNERS TRANSPORT, LTD., foreign business entity situated in Killam, Alberta, Canada, Appellant,
Nicholas R. McKay, an individual, Defendant.
No. 36847-1-II.
Court of Appeals of Washington, Division 2.
November 12, 2008.
*713 Mark Preston Scheer, Jonathan Dirk Holt, Scheer & Zehnder LLP, Seattle, WA, for Appellant.
William Delmar Robison, Gideon D. Caron, Caron Colven Robison & Shafton LLP, Vancouver, WA, for Respondents.
QUINN-BRINTNALL, J.
¶ 1 Nightrunners Transport Ltd. appeals the trial court's denial of its motion to vacate a default order and judgment. It argues that (1) the judgment violated CR 55 and the due process clause because Nightrunners appeared but did not receive notice of the default hearing until after it was held and (2) the trial court abused its discretion when it held that Nightrunners did not present a prima facie defense or prove excusable neglect and when it affirmed a $925,794.54 damages award. We affirm.

FACTS[1]
¶ 2 Juanita Rosander drove down two-lane Highway 14 and stopped to make a left turn. Behind her, Nicholas McKay was driving a truck for Nightrunners. McKay tried to stop. He soon realized that a coffee cup had rolled under the brake pedal, preventing him from braking. He pushed the cup out of the way, began braking, and swerved between oncoming traffic and Rosander's car, attempting *714 to avoid colliding with Rosander. Rosander also tried to avoid the collision by swerving to the right, but McKay's truck hit the side of her car. Rosander suffered extensive and permanent injuries, requiring, among other things, that she involuntarily retire from coaching gymnastics at a public school and discontinue active duty with the United States Army.
¶ 3 Rosander sued McKay and Nightrunners and served each with a summons and complaint.[2] The defendants did not file a formal notice of appearance or any other documents in the superior court. Nightrunners' insurance company, ING Insurance Company of Canada, negotiated with Rosander for quite some time and, thus, contends that it appeared informally.
¶ 4 Rosander moved for default judgment and the matter was set on the July 12 superior court calendar. On the morning of July 12, an ING representative called Rosander's counsel. Rosander's counsel told ING that a default hearing was scheduled that day and ING explained that the case's claim manager was suffering from medical problems and could not work on the case. Rosander's counsel responded that it would continue the default hearing for two weeks, but ING must appear at court and should retain Washington counsel.
¶ 5 Rosander's counsel renoted the default hearing for July 26 and served ING with a notice of the hearing at its Canadian office, where the company was managing the claim. ING did not file any documents with the court or appear at the hearing. On July 26, 2007, the trial court entered a default order and judgment for Rosander. Nightrunners moved to vacate the default; the trial court denied the motion. Nightrunners timely appealed.[3]

ANALYSIS

Notice
¶ 6 Nightrunners argues that the trial court lacked authority to enter a default judgment against it because it did not receive the notice that CR 55(a)(3) requires and because it was denied the constitutional due process right to notice. We disagree.
¶ 7 A trial court has no authority to enter a default judgment against a party who has appeared but did not receive proper notice.[4] CR 55(a)(3); Shreve v. Chamberlin, 66 Wash.App. 728, 731, 832 P.2d 1355 (1992), review denied, 120 Wash.2d 1029, 847 P.2d 481 (1993). As a result, a party who did not receive required notice is entitled as a matter of right to have a default judgment set aside. Tiffin v. Hendricks, 44 Wash.2d 837, 847, 271 P.2d 683 (1954); see also Ware v. Phillips, 77 Wash.2d 879, 884-85, 468 P.2d 444 (1970) (holding a lack of notice voids a judgment on due process grounds). We review de novo questions of law, including questions of adequacy of notice, constitutional law, and whether, on undisputed facts, appearance has been established as a matter of law. Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wash.2d 1, 9, 43 P.3d 4 (2002).

A. No Appearance
¶ 8 Here, the trial court held that Nightrunners had appeared because its insurance company, ING, negotiated with Rosander for two years. Although Rosander did not appeal this ruling, this issue is dispositive and we may affirm a trial court's decision *715 on any ground the record adequately supports. LaMon v. Butler, 112 Wash.2d 193, 200-01, 770 P.2d 1027, cert. denied, 493 U.S. 814, 110 S.Ct. 61, 107 L.Ed.2d 29 (1989).
¶ 9 Under Washington law, Nightrunners did not appear. Shortly before the trial court ruled on Nightrunners' appearance, our Supreme Court rejected the theory that a party can appear for purposes of the CR 55 notice requirement simply through prelitigation communications with the opposing party. In Morin v. Burris, 160 Wash.2d 745, 749-50, 161 P.3d 956 (2007), the court ruled that, for purposes of satisfying CR 55's notice requirement, a party need not appear formally by, for instance, filing an answer, but it must appear in court in some way. To hold otherwise, the court noted, would
permit any party to a dispute, or any claims representative to a potential dispute, to simply write a letter expressing intent to contest litigation, then ignore the summons and complaint or other formal process and wait for the notice of default judgment before deciding whether a defense is worth pursuing.
Morin, 160 Wash.2d at 757, 161 P.3d 956. Here, the undisputed facts demonstrate that ING made no court appearance at any time. Instead, it merely communicated with Rosander about the lawsuit. This is not an appearance. Accordingly, Nightrunners was not entitled to any notice before the default judgment or order.

B. Adequacy of Notice
¶ 10 Although Morin is dispositive, we further note that Nightrunners' challenge to the adequacy of the notice it received lacks merit. Had Nightrunners appeared, Rosander's notice of default would be adequate.
¶ 11 "Any party who has appeared in the action for any purpose shall be served with a written notice of motion for default and the supporting affidavit at least 5 days before the hearing on the motion." CR 55(a)(3). It is undisputed that Rosander mailed an amended citation that states, "The following matter will be brought on for hearing [on July 26, 2007 at 1:30 pm]: Motion for Default." 1 Clerk's Papers (CP) at 11. The certificate of service states that it was mailed to Nightrunners on July 16, 2007.
¶ 12 CR 5(b)(2)(A) explains that service by mail
shall be deemed complete upon the third day following the day upon which they are placed in the mail, unless the third day falls on a Saturday, Sunday or legal holiday, in which event service shall be deemed complete on the first day other than a Saturday, Sunday or legal holiday, following the third day.
July 16, 2007, the date the notice was mailed, was a Monday and there were no legal holidays that week. Thus, under this court rule, the service was "deemed complete" on July 19. CR 5(b)(2)(A). July 19 was seven days before the July 26 default hearing and, therefore, the mailing satisfied the five-day notice requirement. CR 55(a)(3).
¶ 13 Nightrunners initially argues that it did not receive the notice until after the default hearing. But actual receipt is legally insignificant under the court rule's notice requirement. See CR 5(b)(2)(A).
¶ 14 Nightrunners also asserts that CR 5(b)(2)(A) should not apply to foreign parties who did not retain American legal counsel because it takes longer to send mail to foreign countries. However practical Nightrunners' suggestion may be, we have no power to amend a court rule simply because a party thinks the rule is unfair. CR 5 plainly applies to foreign and domestic parties and Nightrunners does not argue otherwise. Moreover, the court rules encourage foreign parties to retain or associate with Washington counsel, a prudent choice, and, in appropriate circumstances, the rules allow vacation of judgments if a party failed to attend a hearing or trial due to excusable neglect. CR 60(b)(1). Applying CR 5(b)(2)(A) is not unfair or inappropriate.
¶ 15 Finally, Nightrunners argues that the untimely receipt of notice violated its right to due process. We disagree. Due process requires "`notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" Olympic Forest *716 Prods., Inc. v. Chaussee Corp., 82 Wash.2d 418, 422, 511 P.2d 1002 (1973) (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). Unless a challenged prohibition involves First Amendment rights, which Nightrunners' does not, we must evaluate its constitutionality as applied to the facts of the case. City of Seattle v. Webster, 115 Wash.2d 635, 640 n. 2, 802 P.2d 1333 (1990) (citing Maynard v. Cartwright, 486 U.S. 356, 361, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988)), cert. denied, 500 U.S. 908, 111 S.Ct. 1690 (1991).
¶ 16 In arguing a violation of its due process rights, Nightrunners again focuses solely on its contention that it did not receive Rosander's notice until after the hearing; but, as noted above, actual receipt is not legally significant. See Olympic Forest Prods., Inc., 82 Wash.2d at 422, 511 P.2d 1002. Sending certified mail from Vancouver, Washington, to Edmonton, Alberta, 10 days before the hearing is "`reasonably calculated, under all the circumstances'" to apprise Nightrunners that a default hearing would take place. Olympic Forest Prods., Inc., 82 Wash.2d at 422, 511 P.2d 1002 (quoting Mullane, 339 U.S. at 314, 70 S.Ct. 652).
¶ 17 We disagree with Nightrunners that its status as a foreign business entity entitles it to special notice and explanation. This is not a situation, such as presented in Spoar v. Spokane Turn-Verein, 64 Wash. 208, 212, 116 P. 627 (1911), in which the defendant's officer, who was served with a summons and complaint, was German, unfamiliar with American legal proceedings, and reasonably believed that he would receive notice of the trial before any further action was required. Here, Rosander extended Nightrunners every professional courtesy, including suggesting American counsel it could hire and giving unrequired notice by telephone and mail. For its part, Nightrunners chose to defend its claim solely through its Canadian insurance company. Rosander did more than required and Nightrunners' claim that Rosander's conduct violated its due process rights fails.
¶ 18 Moreover, the trial court found that Nightrunners was given actual notice of the default hearing two weeks before the July 26 hearing during a telephone call with the claims representative. According to Rosander's counsel, ING's representative called him on July 12 and he told the representative that a default hearing was scheduled that day, but he would continue the hearing for two weeks. The trial court rejected as not credible Nightrunners' contention that it did not understand that the hearing was continued for two weeks rather than stricken and that, as a result of the misunderstanding, it did not receive adequate notice of the second scheduled default hearing on July 26. We do not review a trial court's credibility determinations.[5]Morse v. Antonellis, 149 Wash.2d 572, 574, 70 P.3d 125 (2003). Although it was not required to do so because Nightrunners never appeared, Rosander adequately notified Nightrunners of the hearing on Rosander's default motion and Nightrunners' due process argument has no merit.

Motion To Vacate Judgment
¶ 19 Nightrunners next argues that the trial court abused its discretion when it denied its motion to vacate the default order and judgment under CR 60. We disagree.

A. Standard of Review
¶ 20 "We review a trial court's ruling on a motion to vacate a default judgment for an abuse of discretion." Showalter v. Wild Oats, 124 Wash.App. 506, 510, 101 P.3d 867 (2004). A trial court abuses its discretion only when its decision is manifestly unreasonable or based on untenable grounds. Showalter, 124 Wash.App. at 510, 101 P.3d 867. In determining whether to grant a motion to vacate a default judgment, "[t]he trial court must balance the requirement that each party follow procedural rules with a party's interest in a trial on the merits." Showalter, 124 Wash.App. at 510, 101 P.3d 867. Although "[d]efault judgments are generally disfavored in Washington based on an overriding policy which prefers that parties resolve disputes on the merits," Showalter, *717 124 Wash.App. at 510, 101 P.3d 867, "we also value an organized, responsive, and responsible judicial system where litigants acknowledge the jurisdiction of the court to decide their cases and comply with court rules." Little v. King, 160 Wash.2d 696, 703, 161 P.3d 345 (2007). As our Supreme Court recently noted: "[L]itigation is inherently formal. All parties are burdened by formal time limits and procedures." Morin, 160 Wash.2d at 757, 161 P.3d 956.
¶ 21 A party against whom a default judgment has been entered may move to vacate the default judgment under CR 60. Under that rule, courts consider four factors to determine whether to vacate a default judgment:
The discretion which the trial court is called upon to exercise in passing upon an appropriate application to set aside a default judgment concerns itself with and revolves about two primary and two secondary factors which must be shown by the moving party. These factors are: (1) That there is substantial evidence extant to support, at least prima facie, a defense to the claim asserted by the opposing party; (2) that the moving party's failure to timely appear in the action, and answer the opponent's claim, was occasioned by mistake, inadvertence, surprise or excusable neglect; (3) that the moving party acted with due diligence after notice of entry of the default judgment; and (4) that no substantial hardship will result to the opposing party.
White v. Holm, 73 Wash.2d 348, 352, 438 P.2d 581 (1968).
¶ 22 Here, Rosander concedes that the secondary factors (three and four) weigh in Nightrunners' favor. The question is, therefore, whether the trial court abused its discretion when it concluded that (1) substantial evidence did not support a prima facie defense, (2) Nightrunners' failure to appear was not excusable, and (3) Nightrunners' contention that the judgment amount was unfair was insufficient to vacate the judgment.

B. Defense
¶ 23 Nightrunners first argues that the trial court erred when it concluded that the company failed to present a prima facie defense. We disagree.
¶ 24 To determine whether the evidence supports a prima facie defense, "the trial court must take the evidence, and reasonable inferences therefrom, in the light most favorable to the movant." Pfaff v. State Farm Mut. Auto. Ins. Co., 103 Wash. App. 829, 835, 14 P.3d 837 (2000), review denied, 143 Wash.2d 1021, 25 P.3d 1019 (2001). The defendant satisfies its burden of demonstrating a prima facie defense if it produces evidence that, if later believed by the trier of fact, would constitute a defense to the claims presented. Pfaff, 103 Wash.App. at 835, 14 P.3d 837. Courts do not act as a trier of fact in making such a determination and may not conclusively determine which party's facts control. Showalter, 124 Wash. App. at 512, 101 P.3d 867.
¶ 25 Here, Nightrunners baldly states that it presented a prima facie defense, but it does not explain how the facts support a legally cognizable defense. Taking the evidence in the light most favorable to Nightrunners, the company showed the following facts from the driver's accident report:
I was traveling east ... at roughly 90 km/55m/h when a Chevrolet Suburban [driving] about 30-50 yards in front of me [stopped to turn] left. When I tried to apply my brakes they were stiff. I looked down to see my coffee cup underneath the brake pedal. I could not reach it as my seat belt restricted me so I tried to kick it away. When it came loose I applied my brakes and swerved to the left to avoid the truck. There was oncoming traffic and being a single lane Highway there was not much room so I tried to squeeze between the vehicles. My passenger side fender clipped the truck followed by my corner of the trailer.
1 CP at 81. In a claim evaluation statement, Rosander's attorney also said that Rosander "attempted to evade the collision by pulling ahead and to the right." 1 CP at 102.
*718 ¶ 26 Nightrunners suggests that Rosander's attempt to evade the collision could give rise to contributory negligence. This is incorrect. See Brown v. Spokane County Fire Prot. Dist. No. 1, 100 Wash.2d 188, 197-98, 668 P.2d 571 (1983) (emergency doctrine excuses otherwise negligent behavior caused by making an instinctive choice after an emergency arose at no fault of the party seeking to invoke the doctrine); Boerner v. Estate of Lambert, 9 Wash.App. 145, 151, 510 P.2d 1157 (1973) (holding the defendant bears burden to prove contributory negligence in failing to take evasive action by evidence that plaintiff had a reasonable time after discovery of defendant's negligence to react and avoid the accident). There is no evidence that Rosander's behavior was in any way negligent and no facts support a defense to the claim that McKay was negligent in allowing a coffee cup to fall under his brake pedal. The trial court did not err when it held that Nightrunners failed to show a prima facie defense.

C. Excusable Neglect
¶ 27 Nightrunners next argues that its failure to attend the default hearing was due to excusable neglect. Again, we disagree.
¶ 28 Nightrunners argues that a trial court may not weigh evidence or make credibility determinations when it considers excusable neglect. But the company provides no law supporting this statement; instead, it relies on the general standard for reviewing whether the defendant presented a prima facie defense to the plaintiff's claims. See Pfaff, 103 Wash.App. at 835, 14 P.3d 837. The law requires that trial courts review prima facie defenses in the light most favorable to the defendant because "vacating a default judgment would be pointless [if] a subsequent trial would simply result in another judgment in favor of the plaintiff." Karl B. Tegland, 14 Washington Practice: Civil Procedure § 9.26, at 264 (2003). If a jury could find for the defendant, trial would not be pointless. But this rationale does not extend to whether the defendant's neglect of the case was excusable. The trial court has broad discretion over the issue of excusable neglect and may make credibility determinations and weigh facts in order to resolve it. See Johnson v. Cash Store, 116 Wash.App. 833, 847-49, 68 P.3d 1099 (2003) (upholding trial court's holding that neglect was inexcusable based on credibility determination and weight of evidence), review denied, 150 Wash.2d 1020, 81 P.3d 120 (2003).
¶ 29 Courts determine excusable neglect on a case-by-case basis. Gutz v. Johnson, 128 Wash.App. 901, 918-19, 117 P.3d 390 (2005) (citing Norton v. Brown, 99 Wash. App. 118, 123, 992 P.2d 1019, 3 P.3d 207 (1999), review denied, 142 Wash.2d 1004, 11 P.3d 826 (2000)), aff'd by Morin, 160 Wash.2d 745, 161 P.3d 956. In this case, Nightrunners offered three reasons why it failed to appear at the default hearing.
¶ 30 First, it stated that it did not receive notice until after the default hearing, but the trial court found that Nightrunners' evidence that it received late written notice of default was not credible and that Nightrunners had actual notice of the July 26 hearing date because, during the July 12 telephone conversation, Rosander's counsel agreed to continue the hearing for two weeks. We do not review credibility determinations. Morse, 149 Wash.2d at 574, 70 P.3d 125. Moreover, Nightrunners did not appear or otherwise defend the case until after it received notice of a $925,794.54 default judgment, which was entered following the second noting of the default hearing. The trial court did not abuse its discretion when it found that Nightrunners' failure to defend or appear was inexcusable.
¶ 31 Second, Nightrunners asserted that its agent misunderstood a conversation with Rosander's attorney. Its agent believed that Rosander would not pursue a default order, it said, when Rosander's attorney actually meant he would set over the default hearing for two weeks. Nightrunners argued a miscommunication was caused by a cultural misunderstanding between American and Canadian terminology. But the trial court concluded that Nightrunners had every opportunity to associate with American counsel and that its decision to handle the claim pro se from Canada which, according to *719 Nightrunners, caused this problem, was not excusable neglect. We agree.
¶ 32 Last, Nightrunners argued that it neglected the case because its ING claim handler was on medical disability leave. We note that the record provides little support for this argument. Further, "[j]udicial decisions have repeatedly held that, if a company's failure to respond to a properly served summons and complaint was due to a break-down of internal office procedure, the failure was not excusable." TMT Bear Creek Shopping Ctr., Inc. v. Petco Animal Supplies, Inc., 140 Wash.App. 191, 212, 165 P.3d 1271 (2007). This rule applies with equal force to a company's receipt of properly sent notice. The trial court did not abuse its discretion when it held that Nightrunners' neglect was not excusable.

Damages
¶ 33 Last, Nightrunners argues that the $925,794.54 judgment amount is unfair. This is not a legally cognizable argument and the damages match the severity of Rosander's loss.
¶ 34 In Little, our Supreme Court held that a trial court abuses its discretion if it sets aside a default judgment solely because the "defendant is surprised by the amount or ... the damages might have been less in a contested hearing." 160 Wash.2d at 704, 161 P.3d 345. Rather, "[w]here a party fails to provide evidence of a prima facie defense and fails to show that its failure to appear was occasioned by mistake, inadvertence, surprise, or excusable neglect, there is no equitable basis for vacating judgment." Little, 160 Wash.2d at 706, 161 P.3d 345. Nightrunners' sole argument on damages is: "In light of the medical costs incurred and the injuries complained, it does not appear equitable or just for Respondent to receive a judgment for general damages in excess of $500,000.00!" Br. of Appellant at 29-30. This is not a prima facie defense to the damage award and falls squarely under the holding in Little, 160 Wash.2d at 705-06, 161 P.3d 345.
¶ 35 Nightrunners also raised a new argument in oral argument that the general damages are presumptively excessive when compared with the specific damages. We do not generally consider issues raised for the first time during oral argument. RAP 12.1(a). But we note that Nightrunners is apparently attempting to invoke a recent United States Supreme Court case that discusses punitive, not general, damages. See Exxon Shipping Co. v. Baker, ___ U.S. ___, 128 S.Ct. 2605, 171 L.Ed.2d 570 (2008) (ruling on limits of punitive damages only under maritime law). Accordingly, it is unhelpful. Further, Nightrunners does not dispute that Rosander suffered significant and lifelong injuries to her physical and mental health, as well as her ability to work and engage in activities at which she excelled and once enjoyed. Nightrunners does not seriously dispute liability. Moreover, it has provided no legitimate basis to question that the award was reasonable and it appears that it was.
¶ 36 Nightrunners did not provide any evidence of a prima facie defense and failed to show excusable neglect. Therefore, we affirm the trial court's denial of Nightrunners' motion to vacate Rosander's default order and judgment.[6]
We concur: HUNT, J., and VAN DEREN, C.J.
NOTES
[1] Nightrunners does not assign error to the trial court's factual findings; they are, therefore, verities on appeal. RAP 10.3(g); In re Estate of Jones, 152 Wash.2d 1, 8, 93 P.3d 147 (2004).
[2] Nightrunners was served on April 4, 2007, and all attempts to serve McKay failed.
[3] A commissioner of this court ruled that the order denying the motion to vacate the default judgment was appealable as a matter of right under RAP 2.2(a)(10). Rosander moved to strike portions of Nightrunners' reply brief on the ground that it contains a new argument, namely that inadequate notice of the default hearing violated Nightrunners' due process rights. Our court's commissioner denied Rosander's motion, reasoning that Nightrunners first raised the issue of the adequacy of notice in its opening brief and "[t]he due process standard is inherent in the consideration of the adequacy of notice." Commissioner Ruling dated Apr. 24, 2008. Rosander then moved to modify the commissioner's ruling under RAP 17.7. A panel of this court denied the motion to modify but ruled that we would treat the parties' substantive arguments on the motion to modify as supplemental briefing in the direct appeal.
[4] Parties who did not appear are also entitled to notice under CR 55(f)(1) if more than a year elapsed between the service of summons and the default order. Such is not the case here.
[5] Nightrunners argues that the trial court was required to view the evidence in the light most favorable to it. As discussed below, this misstates the law.
[6] Neither party requested attorney fees.