[No. 43015-7-I.  Division One.  January 24, 2000.]

THE STATE OF WASHINGTON, *Respondent*, v. ANIBAL
MANUEL AVILA-AVINA, *Appellant*.

*Eric J. Nielsen* of *Nielsen, Broman & Associates, P.L.L.C.*, for appellant.

*David S. McEachran, Prosecuting Attorney*, and *Laura D. Hayes* and *Tracy L. Meek, Deputies*, for respondent.

APPELWICK, J. — Anibal Avila-Avina appeals his conviction and sentence for the crime of possessing a firearm without an alien firearm license. Police had seized and detained Avila-Avina for over four hours before he agreed to allow police to search his apartment and car and subsequently made a statement. We hold that the detention was illegal and evidence seized from the home and car, as well as Avila-

Avina's statement, were tainted by that illegality. Further, the State has failed to show that the evidence would have come to light inevitably and independently of the illegality. Therefore, we reverse.

## FACTS

On March 20, 1998, at approximately 7:30 P.M., police deputies were dispatched to a farming apartment complex in Sumas, Whatcom County, to investigate a shooting report. On arriving at the scene, officers found a man with a gunshot to the head lying between two parked cars. The victim's girlfriend, who was on hand at the scene, told police that two Hispanic men, Salvador and Manuel Rivera, were possible suspects. Soon afterward, police apprehended and arrested Manuel Rivera.

Meanwhile, Police Officer Eric Charroin established a roadblock and began monitoring traffic in the area. At approximately 8:12 P.M., Charroin noticed Anibal Avila-Avina, a Hispanic man, walking down the road toward the crime scene. Charroin testified that Avila-Avina was a person of interest because he was Hispanic, like the murder suspects, and because he was wearing thongs with no socks on his feet on that chilly evening. Charroin stopped Avila-Avina and asked him for identification. Avila-Avina's identification indicated that he lived in the same apartment complex where the murder had occurred. Charroin asked Avila-Avina to stay with him.

Because Avila-Avina could not speak English, a Spanish-speaking border patrol agent arrived between one-half to one hour later. Avila-Avina told Charroin, through the agent, that he was on a walk and that he had not seen or heard anything related to the murder. The agent left soon afterward to attend to other business.

Charroin continued to detain Avila-Avina, who sat inside the patrol car. Avila-Avina waited in the car until another deputy came to transport him to the crime scene. After arriving at the crime scene, Avila-Avina waited in the back of

another patrol car for several hours. According to Sergeant Anthony Ferry, who was supervising the crime scene investigation, Avila-Avina was not free to leave during that time.

Police eventually called a Spanish-language interpreter at 11:30 P.M. to assist in speaking with Avila-Avina. The interpreter arrived at the crime scene about one hour later. At 1:00 A.M., Avila-Avina signed a consent form allowing police to search his apartment and car. Police searched the apartment and recovered a leather holster and box of ammunition containing .22 caliber rounds. Inside the car, they recovered a piece of plastic used to package .22 bullets. Police informed Avila-Avina of what they had found. Avila-Avina continued to claim no knowledge of the gun used in the shooting or involvement in the crime.

Police decided at 2:20 A.M. to arrest Avila-Avina for rendering criminal assistance. He was advised of his constitutional rights in Spanish. Sergeant Ferry told Avila-Avina that police believed he was somehow involved in the murder. At that point, Avila-Avina indicated that he wanted to tell "the truth."

Police moved Avila-Avina to the police department building in Bellingham. There, Avila-Avina was advised of his constitutional rights a second time. An interview began at 4:30 A.M. With the aid of the interpreter, Avila-Avina made a statement.

Meanwhile, police executed a search warrant at a residence on East Pole Road at approximately 4:00 A.M. Salvador Rivera was apprehended and arrested at that location. Deputies recovered a Ruger .22 caliber semiautomatic pistol hidden under a cushion near where Salvador had been sleeping. The pistol contained a clip loaded with .22 caliber rounds. The type and brand name of the rounds found in the Ruger matched the rounds recovered from Avila-Avina's apartment. The Ruger fit inside the leather holster recovered from Avila-Avina's apartment, and the Ruger rounds and the rounds from Avila-Avina's apartment also fit inside the plastic insert seized from Avila-Avina's vehicle.

At some point during the night, at least one of the murder suspects told police that Avila-Avina had supplied the gun used in the murder. Police then conveyed this information to Avila-Avina. The record does not reveal, however, which of the two murder suspects provided the information, nor at what time police conveyed the information to Avila-Avina. At the suppression hearing, Sergeant Ferry testified only that he conveyed the information to Avila-Avina some time after Avila-Avina had consented to the search but before Ferry decided to arrest him.

Avila-Avina was charged with one count of possessing a firearm without an alien firearm license in violation of RCW 9.41.170(1). Before trial, he moved to suppress the evidence seized from his apartment and his statements during the in-custody interview. The trial court denied the motion, admitting the evidence under the inevitable discovery doctrine. A jury found Avila-Avina guilty as charged. The court sentenced him to six months in jail. Avila-Avina now appeals the trial court's denial of his motion to suppress.

■ In reviewing evidentiary rulings implicating constitutional rights, we independently evaluate the evidence to determine if there is a constitutional violation. *State v. Taylor*, 50 Wn. App. 481, 485, 749 P.2d 181 (1988). In making this determination, we afford the trial court's findings "great significance." *Id*. at 485.

## TAINT FROM ILLEGAL DETENTION

The first issue is whether the police officers' decision to detain Avila-Avina in a patrol car for six hours before formally arresting him constituted an illegal detention. If so, we must then determine whether the illegal detention tainted the physical evidence obtained from Avila-Avina's apartment and car, as well as Avila-Avina's subsequent confession.

■ When police obtain physical evidence or a defendant's confession as the direct result of an unlawful seizure, the evidence is "tainted" by the illegality and must be

excluded. *Wong Sun v. United States*, 371 U.S. 471, 484-85, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963); *State v. Gonzales*, 46 Wn. App. 388, 397-98, 731 P.2d 1101 (1986).

■ A person is seized when by means of physical force or a show of authority, his freedom of movement is restrained. *State v. Soto-Garcia*, 68 Wn. App. 20, 23, 841 P.2d 1271 (1992). In deciding whether an individual has been seized, the relevant question is whether, under the circumstances, police conduct would have communicated to a reasonable person that he was not free to leave. *Id.*

Here, the trial court concluded, and we agree, that Avila-Avina was seized. After contacting him on the road, Officer Charroin asked Avila-Avina to stay with him. Avila-Avina entered the patrol car voluntarily, to escape the cold outside. Nonetheless, the door could not be opened from the inside, and Charroin testified that he would not have let Avila-Avina leave if he had asked to do so. During the time Avila-Avina was seated in the car, Charroin was either in the front seat or standing nearby. Similarly, after Avila-Avina was transferred to a second patrol car at the crime scene, he was not free to leave. Again, a deputy was either seated in the car with him or standing nearby. A reasonable person in this situation would have concluded that he was not free to leave.

■ When an individual is seized without an arrest warrant, the seizure must be justified at its inception and reasonably related in scope to the circumstances justifying the seizure in the first place. *Terry v. Ohio*, 392 U.S. 1, 19-20, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *State v. Ladson*, 138 Wn.2d 343, 350-51, 979 P.2d 833 (1999). At least three factors are relevant in determining whether the scope of the seizure is so substantial that its reasonableness depends upon probable cause: the purpose of the stop, the amount of physical intrusion upon the suspect's liberty, and the length of time the suspect is detained. *State v. Williams*, 102 Wn.2d 733, 740, 689 P.2d 1065 (1984).

The initial justifiable purpose of the detention in this

case was to determine whether Avila-Avina was one of the murder suspects or had witnessed the crime. Once Officer Charroin determined that Avila-Avina was not one of the Rivera brothers, and after Avila-Avina denied any knowledge of the crime, the purpose of the detention was fulfilled. Yet police continued to detain Avila-Avina for more than four hours before obtaining his consent to search the apartment and car. Police did not have probable cause to arrest Avila-Avina, or to search his home, before obtaining the consent to search. The scope of the detention unreasonably exceeded its initial purpose.

The relevant question in determining if evidence obtained following an illegal detention must be excluded, is whether police obtained the evidence by exploiting the illegality, or whether the means of obtaining the evidence were sufficiently distinguishable from the illegality to purge the primary taint. *Wong Sun*, 371 U.S. 471, 488; *Gonzales*, 46 Wn. App. 388, 398. If evidence is obtained as the result of a defendant's consent to search or confession, the voluntariness of the consent or confession is a threshold requirement but is not alone sufficient to purge the evidence of the primary taint. *See Brown v. Illinois*, 422 U.S. 590, 602, 95 S. Ct. 2254, 45 L. Ed. 2d 416 (1975). Thus, the giving of *Miranda* (*Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, 10 A.L.R.3D 974 (1966)) warnings is not dispositive in determining whether the evidence must be excluded. *Brown*, 422 U.S. at 603. The court must determine whether the means of obtaining the evidence are distinguishable from the illegality based on the facts of each case. *See id.*

When police obtain evidence as the result of a defendant's consent to search or confession, four factors are relevant in determining whether police obtained the evidence by exploiting an illegal arrest: (1) the temporal proximity of the arrest and the subsequent consent or confession; (2) the presence of significant intervening circumstances; (3)

the purpose and flagrancy of the official misconduct; and (4) the giving of *Miranda* warnings. *See Brown*, 422 U.S. at 603-04; *Gonzales*, 46 Wn. App. at 398. The prosecution has the burden of showing admissibility. *Brown*, 422 U.S. at 604.

An application of the four factors here reveals that police obtained evidence from Avila-Avina's apartment and car by exploiting the illegal detention. Avila-Avina's consent to search was contemporaneous with the illegal detention and there were no intervening circumstances. The State provides no reasonable justification for the police officers' decision to detain Avila-Avina for several hours after the initial purpose of the seizure was fulfilled. Finally, Avila-Avina did not receive *Miranda* warnings before consenting to the search. Although the State asserts in its brief that Avila-Avina consented to the search after receiving *Miranda* warnings, the evidence suggests otherwise. Avila-Avina signed the consent to search form at 1:00 A.M., as stated on the form. He was arrested at 2:20 A.M., according to the police report. Sergeant Ferry testified only that Avila-Avina received *Miranda* warnings in conjunction with his arrest:

| Sergeant Ferry: | He was placed into custody at that time. |
| Question: | And was the provision made as to advise him of his constitutional rights in Spanish? |
| Sergeant Ferry: | Yes, they were. |

Avila-Avina's subsequent statement to police was similarly tainted by the illegal detention. Avila-Avina received *Miranda* warnings before making his statement. But he decided to make the statement only after police had confronted him with the evidence seized from his home and car. "When confronted with the fruits of an illegal seizure, it is readily apparent that a suspect confessed due to 'exploitation of that illegality,' whether or not the confession is 'voluntary' for Fifth Amendment purposes." *Gonzales*, 46 Wn. App. 388, 401.

██ A constitutional error is harmless if the appellate court is convinced beyond a reasonable doubt that any reasonable jury would have reached the same result without the error. *State v. Easter*, 130 Wn.2d 228, 242, 922 P.2d 1285 (1996). Here, Avila-Avina's statement and the evidence obtained from his car and apartment were tainted by the illegal detention. Police had additional evidence that Avila-Avina committed the crime of possessing a firearm without an alien firearm license: the statement by one of the murder suspects, who claimed that Avila-Avina had supplied the gun used in the murder. But this evidence was not admitted at trial. We are aware of no other evidence presented at trial. Thus, we cannot say that a reasonable jury would have convicted Avila-Avina without the tainted evidence. The error is not harmless.

## INEVITABLE DISCOVERY

The next issue is whether the trial court erred in admitting the evidence seized from Avila-Avina's home and car, as well as his statements to police, under the inevitable discovery doctrine.

██ Evidence obtained through illegal means is admissible under the inevitable discovery doctrine if the State can prove by a preponderance of the evidence that the police did not act unreasonably or in an attempt to accelerate discovery, and the evidence would have been inevitably discovered under proper and predictable investigatory procedures. *State v. Richman*, 85 Wn. App. 568, 577, 933 P.2d 1088 (1997); *Nix v. Williams*, 467 U.S. 431, 444, 104 S. Ct. 2501, 81 L. Ed. 2d 377 (1984). Because we find the second prong dispositive, we do not consider whether police acted reasonably in this case.

Here, the trial court found in its written ruling that the evidence at issue would have inevitably been discovered because Avila-Avina "would have inevitably been contacted by officers, since his apartment was in extremely close proximity to the body of [the victim]." The State argues

that the court correctly applied the doctrine because police independently discovered and arrested the murder suspects using proper procedures. The evidence would inevitably have come to light, according to the State, because one of the suspects then told police that he had obtained the gun from Avila-Avina's home. These assertions rest on an improper understanding of the inevitability prong of the inevitable discovery rule.

The inevitable discovery doctrine is an exception to the exclusionary rule. The rationale for the exclusionary rule in Washington is to deter unlawful police conduct and protect individual rights. *Richman*, 85 Wn. App. 568, 576. We have held that the inevitable discovery doctrine does not undermine these objectives. *Id.* Our holding was based on the doctrine's requirement that the State prove the evidence would have been inevitably discovered through constitutionally permissible means. *Id.* If the outcome would have been the same without the illegality, excluding the evidence "defies logic and common sense" because police would then be in a worse position than if they had not performed an illegal search. *Id.* at 577.

Thus, in order to ensure that the doctrine does not undermine the purposes of the exclusionary rule, the State must show that the legal means of obtaining the evidence would have been "truly independent" and the discovery by those means would have been "truly inevitable." *United States v. Silvestri*, 787 F.2d 736, 744 (1st Cir. 1986). The State's burden of proof in this regard is significant; the "rule allows neither speculation as to whether the evidence would have been discovered, nor speculation as to how it would have been discovered." *Richman*, 85 Wn. App. at 577. If these requirements are strictly enforced, "post hoc suggestions of alternate legal means will not be accepted as a basis for application of the inevitable discovery exception." *Silvestri*, 787 F.2d at 746.

In the two major published Washington cases to apply

the inevitable discovery doctrine, courts held that the outcome was inevitable where police already had probable cause and an affirmative intention to arrest the defendant when they obtained the evidence through illegal means. In *Richman*, the defendant's briefcase was illegally searched while he was detained in a store manager's office on suspicion of shoplifting. 85 Wn. App. 568, 577. When a police officer entered the manager's office, the defendant was disrobing and displaying several stolen items; the store manager immediately informed the officer that the defendant had stolen the merchandise. *Richman*, 85 Wn. App. at 578-79. We held that the defendant's arrest was "a certainty" and the briefcase would more likely than not have been lawfully searched incident to arrest. *Id.* at 579. In *State v. White*, a police officer observed the defendant engage in behavior consistent with the actions of a person in a drug transaction. 76 Wn. App. 801, 888 P.2d 169 (1995), *aff'd on other grounds*, 129 Wn.2d 105, 915 P.2d 1099 (1996). The officer had probable cause to arrest the defendant and the intention of doing so, when he went into a rest room to look for him. The officer peered over a rest room stall and observed the defendant trying to hide incriminating evidence in his underwear. Although the search was illegal, the court held that the discovery of the evidence was inevitable, because the officer would have arrested the defendant if he had waited for him to exit the rest room stall. Police would have inevitably discovered the evidence in a search subsequent to arrest. *Id.* at 809.

Other courts have similarly required the prosecution to prove that the outcome was truly inevitable and the alternative means truly independent using "historical facts beyond mere speculation." *Silvestri*, 787 F.2d at 745. For instance, in *Nix v. Williams*, the Court concluded that an independent search would have inevitably turned up the murder victim's body. 467 U.S. 431, 449-50, 104 S. Ct. 2501, 81 L. Ed. 2d 377 (1984). The search was actually in progress and approaching the location of the body when the location was discovered by means of an illegally obtained

confession. *Nix*, 467 U.S. at 449. Similarly, the Fifth Circuit, in *United States v. Cherry*, held that the prosecution must demonstrate that the government was actively pursuing a substantial alternative line of investigation at the time of the violation. 759 F.2d 1196, 1205-06, 81 A.L.R. FED. 303 (5th Cir. 1985). *See also Silvestri*, 787 F.2d at 746 (showing of active pursuit of investigation at time of illegality may be required where no search warrant ever obtained; where warrant is obtained, requirement that probable cause be present prior to illegal search ensures both independence and inevitability); *United States v. Satterfield*, 743 F.2d 827, 846 (11th Cir. 1984) (prosecution must demonstrate that lawful means which made discovery inevitable were possessed by police and being actively pursued prior to occurrence of illegal conduct).

Here, the trial court's conclusion that police would have inevitably obtained the tainted evidence, because they would have inevitably and independently contacted Avila-Avina, is erroneous. Even if police had contacted Avila-Avina because his apartment was close to the murder scene, that contact would not have inevitably given police probable cause to search Avila-Avina's apartment and car, nor to believe that he had committed a crime. Moreover, to conclude that Avila-Avina would have consented to a search of his home and car even if he were contacted by police independently is pure speculation.

The State rests its argument that police would have inevitably discovered the illegally obtained evidence on the fact that the murder suspect independently told police that Avila-Avina had supplied the gun used in the murder. This argument is also unpersuasive. The State has the burden of proving that police would have inevitably obtained the information from the murder suspect independently of the illegality. Yet police did not possess the information at the time of the illegality; Sergeant Ferry admitted that the suspect did not claim the gun belonged to Avila-Avina until some time after Avila-Avina consented to the search. Moreover, police were not pursuing an alternative line of

investigation into the crime for which Avila-Avina was charged and convicted, at the time of the illegality. Police had no independent reason to search Avila-Avina's apartment and car before he was detained, nor to believe that Avila-Avina was somehow involved in the murder or had committed a crime. The only evidence available to police at that time was a body at the apartment complex where Avila-Avina lived and Avila-Avina's presence on the road walking toward the murder scene. The State has not proven that the outcome here was inevitable at the time of the illegality; the State's argument rests on post hoc suggestions. Under these facts, we hold that the State has failed to prove that police inevitably would have obtained the evidence through independent legal means.

Because we reverse on the basis that material evidence was tainted by the illegal detention and would not have been discovered inevitably, we do not address Avila-Avina's alternative corpus delicti and sufficiency of the evidence arguments.

Reversed.

BAKER and ELLINGTON, JJ., concur.