# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| TERRY A. VANDERSTOEP and CELESTE VANDERSTOEP, husband and wife,<br><br>Respondents,<br><br>and<br><br>GARY GUTHRIE and KATHLEEN GUTHRIE, as Guardians of HOWIE I. GUTHRIE, a minor,<br><br>Appellants. | No. 49597-0-II<br><br><br>PUBLISHED OPINION |

MAXA, A.C.J. – Gary and Kathleen Guthrie appeal the trial court's denial of their motion

to set aside a default order and vacate a default judgment entered against them and in favor of

Terry and Celeste VanderStoep. The VanderStoeps' lawsuit against the Guthries arose from an

automobile collision caused by the negligence of Howie Guthrie, the Guthries' minor son, in

which Terry[1] suffered serious injuries.

After the Guthries were served with the lawsuit, they notified their insurer, American

Family Insurance Company, and followed up with two telephone messages. American Family's

adjuster handling the matter claimed that, for unexplained reasons, she never received notice of

the lawsuit. Nobody appeared for the Guthries, and the VanderStoeps obtained a default

---

[1] When identified individually, we refer to Terry and Celeste VanderStoep and Kathleen and Howie Guthrie by their first names to avoid confusion. We intend no disrespect.

judgment in the amount of $374,580.36 for Terry's medical expenses, income loss and noneconomic damages, Celeste's loss of consortium, and costs.

The Guthries argue that the trial court erred in denying their motion to set aside the default judgment under CR 60(b)(1) because (1) they presented evidence of a prima facie defense to the VanderStoeps' noneconomic damages claim and (2) their failure to timely appear was the result of mistake, inadvertence, or excusable neglect because they properly notified American Family and followed up on that notice, even if American Family did not have a legitimate excuse for not responding to the complaint. We agree and hold that the portion of the trial court's default judgment relating to the VanderStoeps' noneconomic damages should be set aside.

Accordingly, we reverse the trial court's denial of the Guthries' motion to set aside the noneconomic damages portion of the default judgment, and we remand for further proceedings.

FACTS

*Accident and Injuries*

In July 2014, Howie and Terry were involved in an automobile collision when Howie turned across oncoming traffic without yielding and collided with Terry's car. As a result of the collision, Terry suffered serious injuries to his low back, right knee, and left shoulder in addition to other injuries. A herniated disc in Terry's low back caused right hip and right leg pain.

Terry was 67 years old at the time of the collision. He worked as a golf course groundskeeper. He was off work for about a month after the accident, returned to work part time for light duty for several months, and then was taken off work by his doctor in January 2015.

In February, Terry underwent low back surgery for his herniated disc. The surgery relieved most of his leg symptoms, but he claimed that he continued to suffer hip pain. He also experienced various aches and pains that he attributed to the accident.

Terry returned to work in March, but he claimed that he no longer could perform the physical tasks associated with his job. He was suffering more pain and was concerned that he might be reinjured. Terry retired in November 2015.

*Settlement Negotiations*

Shortly after the accident occurred, the Guthries reported a claim to their insurer, American Family. Kathleen understood that American Family would work directly with the VanderStoeps or their attorney to settle the claim on the Guthries' behalf. The Guthries had no contact with the VanderStoeps or American Family for over a year.

American Family adjusters engaged in settlement negotiations with the VanderStoeps' attorney, William Robison. American Family did not contest that Howie was liable and conceded that Terry's surgery was causally related to the accident.

On February 16, 2016, American Family adjuster Stacy Thrush had a telephone conversation with Robison. Robison stated that the VanderStoeps' final demand was $225,000, and Thrush stated that American Family's final offer was $145,060.44. According to Robison, he told Thrush that she should alert the Guthries that they would soon be served with a summons and complaint. According to Thrush, Robison said that he would obtain the VanderStoeps' permission to file a lawsuit. Thrush called Kathleen and advised her that a lawsuit might be filed.

*Service of Complaint*

The VanderStoeps filed a lawsuit against the Guthries on February 18. Robison did not inform Thrush that the VanderStoeps had filed suit or send her a copy of the complaint. The Guthries were served with the summons and complaint on February 27. That same day, Kathleen called American Family's general claims number and spoke for 13 minutes with a representative assigned to take such calls. Kathleen advised the representative that she had been served with the summons and complaint, provided pertinent information regarding the lawsuit, and answered questions posed to her.

When Kathleen did not receive further communications from American Family, she called American Family's general claims number, once on February 29 or March 1 and again on March 7. On both occasions, she entered what she believed to be Thrush's extension number and left a voicemail stating she had been served with the summons and complaint. Kathleen believed that these communications sufficiently informed American Family of the lawsuit, and her understanding and expectation was that American Family would handle the Guthries' representation.

Thrush stated that she did not receive any information or voicemails regarding the summons and complaint. She also told Kathleen later that she had no record of Kathleen's calls.

*Default Judgment*

The Guthries did not appear in the VanderStoeps' lawsuit. On March 24, the VanderStoeps filed a motion for default and a motion for a default judgment. The support for the default judgment motion was a four-page declaration from Robison describing the accident and summarizing Terry's injuries, treatment, and employment situation. The declaration did not

attach any medical records, medical bills, or income loss documentation. Robison simply stated in a declaration that Terry's total medical expenses were $61,836.44, claimed that Terry had lost $12,000 in income, and stated that he believed a reasonable value for the case was $361,836.44. He also stated that a reasonable sum for Celeste's loss of consortium claim was $15,000.

On March 30, the trial court conducted a short hearing on the motion for a default judgment. Both Terry and Celeste provided very brief testimony. Robison recommended $300,000 for noneconomic damages. The court entered an order of default and a default judgment along with findings of fact and conclusions of law. The judgment included $61,836.44 in medical expenses, $12,000 in income loss, and $300,000 in noneconomic damages.

On April 21, over two months after Robison told Thrush that he would file suit, Thrush left a voicemail with Robison following up with the parties' settlement negotiations. Robison stated that he returned the call and received a voicemail recording, but he was not allowed to leave a message. Thrush called again on June 7 and learned of the default judgment. Thrush then called Kathleen, who said that she had notified American Family of the lawsuit.

*Motion to Vacate Default Judgment*

On June 8, American Family retained an attorney to represent the Guthries and the attorney filed a notice of appearance on June 13. On July 6, the Guthries filed a motion under CR 60(b)(1) to set aside the default order and vacate the default judgment. They challenged only the damages portion of the default judgment, not the liability portion.

To establish a prima facie defense to the VanderStoeps' damages claim, the Guthries submitted as evidence two progress notes from Terry's doctor. A note dated February 12, 2015, a week after the low back surgery, stated that Terry's right leg pain had resolved and he was

returning to daily activities without difficulty, but he would continue with pain medication as needed and would wear a lumbosacral corset for the next six weeks. A note dated March 11, five weeks after surgery, stated that Terry's right leg pain still was resolved, he only had occasional low back discomfort, he was off medication, and he was returning to his usual daily activities. The doctor discussed lifting and activity restrictions, but told Terry that he could perform a light exercise program and play golf.

However, the Guthries also informed the court that they did not have enough information to fully challenge the damages award. Although Robison had supplied some medical records to American Family, the Guthries did not have all the medical records and had no opportunity to obtain a defense medical examination of Terry or take depositions of Terry and Celeste.

Regarding the reason they had not appeared in the action before the default judgment, the Guthries claimed that there had been a miscommunication between them and American Family. But American Family provided no explanation for why Kathleen's notice that she had been served had not caused American Family to retain defense counsel or why Kathleen's messages were not forwarded to Thrush.

The trial court denied the Guthries' motion. It explained its ruling orally, stating that "the disputing of the noneconomic damages by itself seems to be insufficient grounds for oversetting [sic] the default." Report of Proceedings (RP) (July 29, 2016) at 28. The court further explained that there was evidence of a substantial injury and medical expenses, and that based on substantial evidence and representations of counsel the damages award was appropriate.

The Guthries appeal the trial court's order denying their motion to set aside the default order and the default judgment.

6

No. 49597-0-II

ANALYSIS

A.    STANDARDS FOR SETTING ASIDE DEFAULT JUDGMENT

CR 55(c) provides that a trial court may set aside an entry of default and a default

judgment in accordance with CR 60(b). Under CR 60(b)(1), a party may obtain relief from a

default judgment based on "[m]istakes, inadvertence, surprise, excusable neglect or irregularity

in obtaining a judgment or order."

    1.    Application of *White* Test

Whether a trial court should set aside a default judgment under CR 60(b)(1) depends

upon application of a four-part test first articulated in *White v. Holm*, 73 Wn.2d 348, 352, 438

P.2d 581 (1968).

> A party moving to vacate a default judgment must be prepared to show (1) that
> there is substantial evidence supporting a prima facie defense; (2) that the failure to
> timely appear and answer was due to mistake, inadvertence, surprise, or excusable
> neglect; (3) that the defendant acted with due diligence after notice of the default
> judgment; and (4) that the plaintiff will not suffer a substantial hardship if the
> default judgment is vacated.

*Little v. King*, 160 Wn.2d 696, 703-04, 161 P.3d 345 (2007). The first two factors are "primary"

and the second two are "secondary." *Id.* at 704.

Here, the VanderStoeps concede that the Guthries can satisfy the two secondary factors.

And the Guthries concede that they do not have a defense to Howie's negligence liability and

economic damages. The only issues are whether the Guthries presented substantial evidence

establishing a prima facie defense to the VanderStoeps' noneconomic damages claim and

whether the Guthries' failure to timely appear was excusable.

Several well-settled principles guide our review of a trial court's decision on a motion to

set aside a default judgment. First, default judgments generally are disfavored because courts

7

prefer to resolve cases on their merits. *Id.* at 703. However, courts also value a judicial system where litigants comply with court rules. *Id.* We must balance these competing concerns. *Id.*

Second, "whether or not a default judgment should be set aside is a matter of equity." *Id.* at 704. Our primary concern is whether justice is being done. *Id.* at 703. In reviewing a trial court's decision on a motion to set aside a default judgment, we must assess whether that decision is just and equitable. *Rush v. Blackburn*, 190 Wn. App. 945, 956-57, 361 P.3d 217 (2015).

Third, application of the four-part test is not mechanical. *Little*, 160 Wn.2d at 704. What is just and equitable must be determined based on the specific facts of each case, not based on a fixed rule. *Id.* at 703.

2.    Relationship Between Primary Factors

The strength of the defendant's defense determines the significance of the defendant's reasons for failing to timely appear and defend. *See Akhavuz v. Moody*, 178 Wn. App. 526, 532-33, 315 P.3d 572 (2013); *White*, 73 Wn.2d at 352-53. When the defendant can demonstrate a strong or virtually conclusive defense, a default judgment generally should be set aside regardless of why the defendant failed to timely appear unless that failure was willful or the secondary *White* factors are not satisfied. *Akhavuz*, 178 Wn. App. at 533. But when the defendant establishes only a prima facie defense, the reasons for the failure to timely appear become the crucial consideration, again in conjunction with the secondary factors. *Id.*

Here, the Guthries do not contend that they have shown a strong or virtually conclusive defense to the VanderStoeps' damages claim; they argue only that they have raised a prima facie defense. Therefore, we must address both primary factors.

8

3.  Standard of Review

We review a trial court's ruling on a motion to vacate a default judgment for abuse of discretion. *Rush*, 190 Wn. App. at 956. A trial court abuses its discretion by making a decision that is manifestly unreasonable or by basing its decision on untenable grounds or untenable reasons. *Id.* A decision based on a misunderstanding of the law constitutes an abuse of discretion. *Little*, 160 Wn.2d at 703.

Significantly, we are more likely to find an abuse of discretion when the trial court denies a motion to set aside a default judgment than when the trial court grants such a motion. *Rush*, 190 Wn. App. at 957.

B.  PRIMA FACIE DEFENSE TO PERSONAL INJURY DAMAGES

The Guthries argue that they satisfied the first *White* factor because they submitted substantial evidence to establish a prima facie defense to the VanderStoeps' noneconomic damages claim. We agree.

1.  General Principles

To set aside a default judgment, a defendant generally must submit affidavits identifying specific facts that support a prima facie defense. *Shepard Ambulance, Inc. v. Helsell, Fetterman, Martin, Todd & Hokanson*, 95 Wn. App. 231, 239, 974 P.2d 1275 (1999). Allegations or conclusory statements are insufficient. *Id.* Similarly, the defendant must do more than present speculation regarding the existence of a defense. *Little*, 160 Wn.2d at 704-05. The defendant must present "concrete facts" that support a defense. *Ha v. Signal Elec., Inc.*, 182 Wn. App. 436, 449, 332 P.3d 991 (2014).

9

Regarding a personal injury damages claim, alleging merely that the damages awarded in a default judgment "do[] not appear equitable or just" does not create a prima facie defense. *Rosander v. Nightrunners Transp., Ltd.*, 147 Wn. App. 392, 408, 196 P.3d 711 (2008) (quotation marks and citation omitted); *see also Calhoun v. Merritt*, 46 Wn. App. 616, 620, 731 P.2d 1094 (1986) (stating that an allegation that the damages award was "questionable" is insufficient). In addition, "[i]t is not a prima facie defense to damages that a defendant is surprised by the amount or that the damages might have been less in a contested hearing." *Little*, 160 Wn.2d at 704. A defaulting defendant bears the risk that the amount of the damages award might be surprising. *Shepard Ambulance*, 95 Wn. App. at 240-41.

When evaluating the facts the defendant presents to support a prima facie case, the trial court does not act as a trier of fact that weighs the evidence. *Rosander*, 147 Wn. App. at 405. Instead, the trial court must view the evidence and reasonable inferences therefrom in the light most favorable to the defendant. *Ha*, 182 Wn. App. at 449. "The trial court need only determine whether the defendant is able to demonstrate any set of circumstances that would, if believed, entitle the defendant to relief." *Id.* And the defendant's argument does not have to be particularly strong or conclusive; in some circumstances, even a " 'tenuous' " defense may be sufficient to support a motion to vacate. *Little*, 160 Wn.2d at 711 (quoting *White*, 73 Wn.2d at 353).

2. Disregarding Prima Facie Defense Requirement

A few cases have indicated that the trial court has discretion to disregard the prima facie defense requirement when deciding to set aside the damages portion of a default judgment. In *Calhoun*, Division Three of this court highlighted the difficulty a defendant in a personal injury

10

action has in showing a prima facie defense to a general damages award without the opportunity for discovery. 46 Wn. App. at 620-21. As the court noted, "development of a defense to the damages would require the examination of [the plaintiff] by a defense expert." *Id.* at 620. The court also recognized that "presenting a defense to damages for pain and suffering is always complicated by the subjective . . . nature of such damages." *Id.*

Based on these considerations, the court set aside the default judgment without requiring the defendant to show a prima facie damages defense. *Id.* at 620-21. The court concluded, "Given these circumstances, it would be inequitable and unjust to deny the motion to vacate the damage portion of the judgment on the ground that Mr. Merritt did not present a prima facie defense." *Id.*

Division One of this court acknowledged the holding in *Calhoun* in two subsequent cases. In *Shepard Ambulance*, the court cited *Calhoun* in stating that "a trial court has discretion to vacate the damages portion of a default judgment even where no meritorious defense is established." *Shepard Ambulance*, 95 Wn. App. at 241. In *Farmers Insurance Co. of Washington v. Waxman Industries, Inc.*, the court stated:

> Once, in a personal injury case where the defendant did not specify facts that would support vacation of a default judgment, we nevertheless held that the default judgment should be set aside as to damages only (not liability) because no discovery had taken place. [*Calhoun*, 46 Wn. App. at 620-21.] We accepted the defendant's argument about the difficulty of challenging the damages awarded for pain and suffering without the opportunity for discovery, which would include a defense medical examination.

132 Wn. App. 142, 147, 130 P.3d 874 (2006).

And the Supreme Court in *Little* stated, "*Except in unusual circumstances*, a party who moves to set aside a judgment based upon damages must present evidence of a

prima facie defense to those damages." 160 Wn.2d at 704 (emphasis added). In other words, the court seemed to acknowledge that the trial court could exercise its discretion in certain unusual situations to set aside the damages portion of a default judgment without a showing of a prima facie defense. *See id.*

        3.    Sufficient Evidence of Prima Facie Damages Defense

Apart from discussing when a defendant is not required to present a prima facie defense, three cases have addressed what evidence is sufficient to present a prima facie defense regarding a noneconomic damages claim in a personal injury action.

In *Showalter v. Wild Oats*, the plaintiff alleged that she was injured after slipping and falling in a grocery store. 124 Wn. App. 506, 508-09, 101 P.3d 867 (2004). The plaintiff's affidavit in support of her complaint stated that she had received chiropractic treatment for injuries incurred in an automobile accident four years before her fall and that she had seen another doctor for spinal injuries two years before her fall. *Id.* at 513. The court held that, considering the evidence in the light most favorable to the defendant, the existence of similar preexisting injuries "persuasively challenge[d] the amount of damages for past and future non-economic loss." *Id.*

In *Gutz v. Johnson*, two plaintiffs alleged that they suffered personal injuries in an automobile accident. 128 Wn. App. 901, 905, 117 P.3d 390 (2005), *aff'd sub nom. Morin v. Burris*, 160 Wn.2d 745, 161 P.3d 956 (2007). The medical records of one plaintiff showed that her treatment first occurred more than two years after the accident. *Id.* at 917. The evidence showed that the other plaintiff had suffered from prior neck and back problems, that she had received medical treatment for neck pain before the accident, and that the only consistent

medical treatment she received immediately after the accident was massage therapy. *Id.* at 918. The court noted that "the submitted medical documentation appears significantly inconsistent with the general damages award." *Id.* The court concluded that, considering the evidence in the light most favorable to the defendants, the defendants presented substantial evidence of a prima facie defense regarding the damages award. *Id.*

On the other hand, in *Little* the defendant argued that "preexisting conditions may have contributed to Little's injury." 160 Wn.2d at 704. The defendant's only evidence to support this argument was a declaration from an insurance adjuster stating that the plaintiff's medical records included reports of headaches, hip pain, and depression before the collisions. *Id.* The court stated, "But the moving parties have simply not presented any evidence that would tend to show that Little's preaccident aches, pains, and depression were related in any way to her postaccident condition. Even viewed in the light most favorable to the parties moving to set aside the default judgment, mere speculation is not substantial evidence of a defense." *Id.* at 704-05. Therefore, the court held that the defendants had not shown substantial evidence of a prima facie defense. *Id.* at 705.

4. Prima Facie Defense Analysis

Here, the Guthries did more than merely argue that the general damages award in the default judgment was too high or unfair. They relied on affirmative evidence – two progress notes made shortly after Terry's surgery – to establish a prima facie defense. The first note stated that "[Terry's] right leg radicular complaints have resolved," that "[h]e has incisional low back discomfort, as expected, but he is returning to his usual daily activities without difficulty," and that he was taking medication for pain relief and using a supportive corset. Clerk's Papers

(CP) at 83. The second note repeated that Terry's leg pain had resolved and added that "[h]e has only occasional low back discomfort but is much better than prior to surgery," that "[h]e is returning to his usual daily activities without difficulty," that he continued to use the corset when upright, and that he stopped taking pain medication. CP at 84. He was allowed to perform a light exercise program and play golf.

These progress notes are concrete evidence that the Guthries may have a defense regarding the amount of noneconomic damages. The trial court awarded $300,000 in general damages for Terry's injuries and Celeste's loss of consortium. That amount could be legitimately questioned if Terry was essentially pain free and returning to full activities only five weeks after his low back surgery, as his progress notes suggested.

The Guthries' showing of a defense may not be particularly strong. But we acknowledge the difficulty in showing a prima facie defense to a noneconomic damages claim. As the court noted in *Calhoun*, noneconomic damages are subjective and determining the amount of such damages often depends on expert testimony and discovery. 46 Wn. App. at 620. Under these circumstances, it is appropriate to allow even minimal evidence to establish a prima facie defense to a noneconomic damages claim. Viewed in a light most favorable to them, the Guthries presented substantial evidence of at least a prima facie defense.

Further, it appears that the trial court did not even consider the Guthries' evidence because of a misunderstanding of the applicable law. In its oral ruling, the court stated that "I think the most appropriate ruling is that the disputing of the noneconomic damages by itself seems to be insufficient grounds for oversetting the default." RP (July 29, 2016) at 28. The trial court's ruling that disputing noneconomic damages by itself could not support setting aside a

14

default judgment was clear legal error. Multiple cases show that a prima facie defense to damages can be sufficient to set aside a default judgment. *E.g.*, *Little*, 160 Wn.2d at 704; *Showalter*, 124 Wn. App. at 513. The trial court's decision based on this misunderstanding of the law constituted an abuse of discretion.

     5.    Substantial Evidence to Support Default Judgment

The VanderStoeps argue that even if the Guthries did show a prima facie defense, the damages portion of a default judgment cannot be set aside if substantial evidence supports the amount of the judgment. This argument is based on the court's statement in *Shepard Ambulance* that "the standard for vacating awards of damages from default judgments is the same as the standard for setting aside awards of damages for trials. Thus, the default award here could be vacated if there were [sic] not substantial evidence to support the award of damages." 95 Wn. App. at 242. The VanderStoeps claim that the Supreme Court adopted this rule in *Little* when it stated, "The amount of damages in a default judgment must be supported by substantial evidence." 160 Wn.2d at 704.[2]

However, neither *Shepard Ambulance* nor *Little* eliminated the *White* prima facie defense factor for setting aside a default judgment. In *Shepard Ambulance*, the court stated that "a trial court has discretion to vacate the damages portion of a default judgment even where no meritorious defense is established." 95 Wn. App. at 241. In that context – i.e., *when the defendant had not presented a prima facie defense* – the court stated that a defendant had to

---

[2] The trial court apparently adopted this approach, concluding that it would deny the Guthries' motion to set aside the default judgment because there was "substantial evidence of substantial injury" and "substantial evidence . . . that the damages entered by the Court were legitimately entered and appropriately entered at that time." RP (July 29, 2016) at 28.

show that substantial evidence did not support the plaintiff's award to set aside the damages portion of a default judgment. 95 Wn. App. at 241-42. And the court in *Little* more recently confirmed that "a party who moves to set aside a judgment based upon damages must present *evidence of a prima facie defense* to those damages." 160 Wn.2d at 704 (emphasis added). This passage from *Little* comes immediately before the language the VanderStoeps quote about substantial evidence. Therefore, although *Shepard Ambulance* and *Little* establish that a default damages award must be supported by substantial evidence, they also confirm that the moving party must raise only a prima facie defense to vacate an award.

Here, the proper inquiry for evaluating the Guthries' motion to set aside the default judgment was whether substantial evidence supported a prima facie defense to the VanderStoeps' damages claim, not whether substantial evidence supported the trial court's damages award.[3] The proper inquiry for the trial court was whether the Guthries were "able to demonstrate any set of circumstances that would, if believed, entitle the defendant to relief." *Ha*, 182 Wn. App. at 449.

6. Conclusion

We conclude as a matter of law that the Guthries established a prima facie defense to the VanderStoeps' noneconomic damages claim. Therefore, they satisfied the first *White* factor.

---

[3] Arguably, there was not substantial evidence to support the trial court's $300,000 general damages award. The VanderStoeps submitted no medical records or any other documentation regarding Terry's injuries, and no declaration from either Terry or Celeste. The only "evidence" submitted in support of the default judgment was a short declaration from Robison summarizing Terry's injuries, treatment, and wage loss. And at the default judgment hearing, Terry and Celeste provided very brief testimony that did not elaborate in any way on Terry's injuries or recovery.

C.      REASON FOR FAILURE TO TIMELY APPEAR

The Guthries argue that they satisfied the second *White* factor because their actions in properly giving American Family notice of the lawsuit did not cause their failure to timely appear. We agree.

1.      General Principles

Whether a defendant's failure to timely appear in an action results from mistake, inadvertence, surprise, or excusable neglect is determined based on the particular facts of each case. *See Akhavuz*, 178 Wn. App. at 534-35. The trial court has broad discretion over the issue of excusable neglect. *Rosander*, 147 Wn. App. at 406.

Unlike for the prima facie defense factor, the trial court does not assess evidence of the second factor in the light most favorable to the defendant. *Id.* Instead, the trial court may make credibility determinations and weigh the evidence in order to determine whether the defendant can show mistake, inadvertence, or excusable neglect. *Id.*

When the defendant's insurer is involved, relevant facts can include the defendant's promptness in notifying the insurer of an outstanding claim, *White*, 73 Wn.2d at 354; whether the movant reasonably believed that the insurer was resolving the claim, *Berger v. Dishman Dodge, Inc.*, 50 Wn. App. 309, 311-12, 748 P.2d 241 (1987); *Calhoun*, 46 Wn. App. at 621; whether the insurer provided adequate information to the defendant regarding what to do when served, *Norton v. Brown*, 99 Wn. App. 118, 124, 992 P.2d 1019 (1999); *Calhoun*, 46 Wn. App. at 621; what steps the defendant took to follow the lawsuit's progress, *White*, 73 Wn.2d at 355; *Akhavuz*, 178 Wn. App. at 537; and the amount of time before the defendant moved to vacate. *Akhavuz*, 178 Wn. App. at 538.

17

2.    Insurer's Failure to Respond to Lawsuit

Here, American Family's failure to act after receiving notice of the VanderStoeps' lawsuit caused the Guthries' failure to timely appear. The cases addressing a defendant's failure to timely appear because of the interaction between the defendant and an insurer generally fall into three factual scenarios.

The first scenario occurs when the defendant fails to notify the insurer that a complaint has been served based on a misunderstanding about whether the insurer already knows about the lawsuit and is defending. In this situation, the general rule is that the defendant's failure to appear is excusable. *See Norton*, 99 Wn. App. at 124; *Calhoun*, 46 Wn. App. at 621. "A genuine misunderstanding between an insured and his insurer as to who is responsible for answering the complaint will constitute a mistake for purposes of vacating a default judgment." *Norton*, 99 Wn. App. at 124.

The second scenario occurs when the defendant notifies its insurer that a complaint has been served and the insurer fails to arrange for a timely appearance because of a legitimate excuse. In this situation, the general rule is that the insurer's mistake or excusable neglect can be considered in excusing the defendant's default. *Berger*, 50 Wn. App. at 312. In *Berger*, the court rejected the plaintiff's argument that only the acts of the insured defendant could be considered in assessing mistake or excusable neglect, not the acts of the insurer. *Id.* The court stated, "The acts or omissions of an insurance carrier will be imputed to the insured for purposes of vacating a default judgment." *Id.*

The third scenario occurs when the insured notifies the insurer or the insurer otherwise receives notice that a complaint has been filed, but the insurer fails to timely appear *without* a

legitimate excuse. In this situation, the general rule is that the trial court should focus on whether the defendant, not the insurer, acted with excusable neglect.

The Supreme Court outlined this rule in *White*. In that case, the defendant promptly notified his insurance agent when he was served with a summons and complaint and justifiably believed that the insurer would provide counsel to defend the lawsuit. 73 Wn.2d at 354-55. The Supreme Court stated:

> We need not now decide whether or not there was in fact any culpable neglect on the part of the insurer or its agents, for we are satisfied that in any event the instant circumstances do not warrant an imputation of any such fault to defendants, who were otherwise found to be blameless.

*Id.* at 354. The court stated that "we would be most reluctant to hold that Mr. Holm tendered the defense of the action to the insurer at his peril." *Id.* at 355. Therefore, the court concluded that the defendant had established that his failure to appear was based on a bona fide mistake. *Id.*

Three court of appeals cases have addressed this third scenario. In *Gutz*, a decision of this court, the defendant promptly left a message with his insurer after being served with a complaint. 128 Wn. App. at 919. The insurance adjuster did not remember receiving the call and the insurer claimed that it was unaware of the lawsuit until after the default judgment had been entered. *Id.* Without analysis, this court stated that from the defendant's perspective, those facts demonstrated a "misunderstanding" between the defendant and the insurer, that it was reasonable for the defendant as a layperson to believe he did not need to take further steps, and that the defendant's failure to confirm the insurer's receipt of his call was not an equitable and just reason to deny him a trial on the merits. *Id.*

In *Norton*, the defendant did not notify his insurer that a summons and complaint had been served, but the plaintiff's attorney sent a copy of the complaint to the insurer. 99 Wn. App.

at 120. The insurer did not retain counsel to appear for the defendant until after a default was entered. *See id.* at 120-21, 125. The court rejected the plaintiff's argument that the focus should be on the insurer's failure to protect the interests of its insured. *Id.* at 125. The court pointed out that the defendant, not the insurer, was seeking to vacate the default judgment. *Id.* The court held that the trial court abused its discretion by focusing more on the insurer's conduct than on the defendant's excusable neglect. *Id.*

In contrast, Division One in *Akhavuz* focused more on the insurer's actions in this situation. In that case, the defendant faxed the summons and complaint to his insurer, but the insurer failed to retain counsel to appear for the defendant and the plaintiff obtained a default judgment. 178 Wn. App. at 530. The insurer offered no excuse for its failure to retain counsel. *Id.* at 536. The trial court vacated the default judgment, ruling under *White* that the insurer's negligence could not be imputed to an innocent insured. *Id.* at 534.

Division One held that the trial court erred in vacating the default judgment. *Id.* at 528. The court noted that the defendant had presented no evidence of mistake or misunderstanding on the part of its insurer or defense counsel that would excuse the failure to timely appear. *Id.* The court emphasized that "[t]here is no 'innocent insured doctrine' that allows an insurer to escape responsibility by keeping its insured unaware that the matter is being neglected." *Id.* at 528-29; *see also id.* at 534. The court further stated:

> Insurance companies do not have an automatic right to vacation of a default judgment when they fail to communicate to an insured that nothing is being done. If an insurer's reasonable excuse for a short delay can be attributed to the defendant for purposes of weighing the second *White* factor, as was done in *Berger*, there is no reason why the insurer's lack of a reasonable excuse for a lengthy delay cannot also be attributed to the defendant.

*Id.* at 538.

But the court in *Akhavuz* also considered the defendant's conduct. The court pointed out that after the defendants faxed the complaint to the insurer, they heard nothing about the lawsuit for more than a year and made no effort to confirm that it was being defended. *Id.* at 537. The court stated that "a defendant's failure to 'pursue the adjuster with inquiries relative to the progress of the matter' is a factor that can weigh against a finding of excusable neglect, and in this case, it does." *Id.* (quoting *White*, 73 Wn.2d at 355). The court also found to be relevant the fact that the defendant waited for a prolonged period – approximately seven months after learning of the default – to file a motion to vacate. *Akhavuz*, 178 Wn. App. at 536. This delay, the court noted, essentially halted the adversary process. *Id.* at 538.

The court in *Akhavuz* apparently found that neither the defendant nor the insured had a legitimate excuse for failing to timely appear. This would constitute a fourth scenario. In that situation, there would be no question that the default did not result from mistake or excusable neglect. *See Smith v. Arnold*, 127 Wn. App. 98, 113, 110 P.3d 257 (2005) (finding no excusable neglect when neither the defendant's nor the insurer's failure to appear was the result of excusable neglect).

### 3. Mistake/Excusable Neglect Analysis

Here, the Guthries took appropriate steps to ensure that American Family would arrange to defend them against the VanderStoeps' lawsuit. Kathleen contacted American Family on the same day that the summons and complaint was served and actually spoke with an American Family representative about the lawsuit. She then followed up with two telephone calls over the next nine days. Her understanding and expectation that American Family would handle the case

was reasonable. Therefore, as in *White* and *Gutz*, the failure to timely appear, *from the Guthries' perspective*, was the result of mistake, inadvertence, surprise, or excusable neglect.

Conversely, American Family did not present any legitimate excuse for its failure to arrange for a defense of the Guthries. The evidence showed that Kathleen had talked to a claims representative about service of the summons and complaint and followed up with two voicemail messages. American Family's only explanation was that Thrush was not aware that the lawsuit had been served. But American Family did not explain why the notice and the messages were not forwarded to Thrush. American Family simply stated that it was "not disputing at this time that they have a line in their system that [Kathleen] made some calls. The problem is we don't know what that line means, they're trying to find out. It just simply didn't make its way to Ms. [Thrush]." RP (July 29, 2016) at 23-24. And American Family did not explain why nobody else retained counsel to defend the Guthries after receiving Kathleen's notice.

Further, Robison told American Family that the VanderStoeps would be filing a lawsuit and Thrush warned Kathleen that a lawsuit might be filed. But then Thrush waited for over two months before checking in with Robison about the lawsuit.

In the absence of any explanation, it appears that American Family's failure to arrange for an attorney to defend the Guthries resulted in a breakdown of its internal office procedures. The general rule is that "if a company's failure to respond to a properly served summons and complaint was due to a breakdown of internal office procedure, the failure was not excusable." *TMT Bear Creek Shopping Ctr., Inc. v. PETCO Animal Supplies, Inc.*, 140 Wn. App. 191, 212, 165 P.3d 1271 (2007). Therefore, American Family's failure to arrange for a timely appearance

on behalf of the Guthries did not result from mistake, inadvertence, surprise, or excusable neglect.

The question here is which party's behavior controls: the Guthries' legitimate excuse for not appearing or American Family's inexcusable neglect. Under *White*, *Norton*, and *Gutz*, the proper focus is on the Guthries' conduct rather than on American Family's conduct. Under *Akhavuz*, American Family's inexcusable conduct arguably could be imputed to the Guthries and preclude them from establishing mistake, inadvertence, surprise, or excusable neglect.

However, we believe that *Akhavuz* is distinguishable from the facts of this case. In that case, the court faulted the insured for doing nothing for a year after faxing the insurer a summons and complaint and then waiting for an extended period before moving to vacate the default order. *Akhavuz*, 178 Wn. App. at 536-37. The court stated that these factors weighed against a finding of excusable neglect. *Id.*

Here, the Guthries talked with an American Family representative about service of the complaint and followed up twice. They also quickly moved to vacate after learning of the default. Further, the court's statement in *Akhavuz* that an insurer's misconduct could be imputed to a defendant for purposes of upholding a default judgment is inconsistent with the Supreme Court's ruling in *White* that, under the facts of that case, the insurer's conduct would not be imputed to a blameless defendant. *White*, 73 Wn.2d at 354.

We agree with the court in *Akhavuz* that there is no "automatic" innocent insured rule. As noted above, what is just and equitable must be determined based on the specific facts of each case, not based on a fixed rule. *Little*, 160 Wn.2d at 703-04. Ultimately, we must determine based on the facts of this case whether it is fair and equitable to subject the Guthries to a default

judgment based on the inexcusable conduct of its insurer. Allowing the default judgment to stand here is not fair to the Guthries. They did what they were supposed to do when served with the complaint. Like the Supreme Court in *White*, we are reluctant to hold that the Guthries tendered the defense of the action to American Family at their peril. 73 Wn.2d at 355.

    4.    Ultimate Liability of Insurer

The VanderStoeps argue that if the default judgment stands, American Family and not the Guthries will have to pay the full judgment. Because American Family breached its duty to defend the Guthries, it could be found liable for the full amount of the judgment, even for amounts above policy limits. *See Truck Ins. Exch. v. VanPort Homes, Inc.*, 147 Wn.2d 751, 765-66, 58 P.3d 276 (2002); *Kirk v. Mt. Airy Ins. Co.*, 134 Wn.2d 558, 561, 951 P.2d 1124 (1998). The VanderStoeps argue that upholding the default judgment will place the cost of the judgment on American Family, where it belongs because of its inexcusable conduct.

However, although the Guthries may have a strong bad faith claim against American Family if we do not set aside the default judgment, they are not guaranteed to prevail in a bad faith action. In addition, pending resolution of that claim, the large judgment would remain against the Guthries personally, which might adversely affect them.[4] Finally, the VanderStoeps provide no authority for the proposition that who pays a default judgment is relevant to the second *White* factor.

---

[4] During oral argument, the VanderStoeps for the first time pointed out that American Family had filed a supersedeas bond guaranteeing payment of the judgment against the Guthries if we affirm. However, they cite no authority for the proposition that the insurer's posting of a supersedeas bond is a factor that can be considered in determining whether to set aside a default judgment. And the parties have not addressed whether the Guthries could be responsible for a portion of any bond payment.

5.    Conclusion

We conclude that the Guthries' failure to timely appear resulted from mistake, inadvertence, surprise, or excusable neglect despite American Family's inexcusable conduct. Because of the Guthries' diligence, American Family's conduct should not be imputed to them to uphold the default judgment. Accordingly, we hold that the Guthries satisfied the second *White* primary factor.

D.    SETTING ASIDE DEFAULT JUDGMENT

The Guthries presented a prima facie defense to the default judgment's noneconomic damages award by presenting evidence that Terry had limited pain and was recovering well after his surgery. Further, the Guthries' failure to timely appear in response to the VanderStoeps' lawsuit was not the result of the Guthries' conduct – Kathleen gave American Family verbal notice of the lawsuit, had a lengthy conversation with an American Family representative about the lawsuit, made two follow-up calls, and reasonably believed that American Family would defend. The Guthries' diligence means that American Family's inexcusable failure to respond to the lawsuit should not be imputed to them. And there is no dispute that the Guthries satisfied the third and fourth *White* factors of due diligence and lack of substantial hardship to the VanderStoeps.

Accordingly, we hold that the trial court abused its discretion in denying the Guthries' motion to set aside the default judgment. However, as the Guthries concede, only the noneconomic damages portion of the judgment – Terry's general damages and Celeste's loss of consortium damages – should be set aside. The default judgment remains valid with regard to liability, past medical expenses of $61,836.44, and past income loss of $12,000.

No. 49597-0-II

CONCLUSION

We reverse the trial court's denial of the Guthries' motion to set aside the noneconomic

damages portion of the default judgment, and we remand for further proceedings.

_____
MAXA, A.C.J.


We concur:

_____
JOHANSON, J.

_____
LEE, J.